775 P.2d 657

**Gordon KNOPP, Plaintiff–Appellant,**

v.

**Ron NELSON, Defendant–Respondent.**

**No. 17587.**

Court of Appeals of Idaho.

June 20, 1989.

---

Charles A. Smyser of Connolly & Smyser, Boise, for plaintiff-appellant.

Robert E. Neate, Coeur d'Alene, for defendant-respondent.

SWANSTROM, Judge.

Gordon Knopp appeals from an appellate decision of the district court which af-firmed a magistrate's dismissal of Knopp's action for extra wages under a logging agreement he had with Ron Nelson. The issues are whether the trial court erred as a matter of law in concluding that Knopp was not entitled to payment on a gross volume basis for his logging work, and whether the district court erred as a matter of law in holding on appeal that the agreement between Knopp and Nelson must be in writing. We reverse. We remand the case to the trial court for entry of judgment in favor of Knopp.

■ When we review a decision of the district court acting in its appellate capacity, we conduct an independent examination of the trial record. We determine whether findings made by the magistrate are supported by substantial evidence and we determine whether the magistrate correctly applied the law to the facts as found. Of course, we are free to reach our own conclusions of law on the facts presented.

The underlying facts are simple. Knopp contracted with Nelson to work as a skidder operator at Nelson's logging project in the Fox Creek area of Bonner County. Nelson paid Knopp at the rate of $9 per thousand board feet on a "net scale" basis for skidding logs. After the project was completed, Knopp filed an action in the small claims department of the magistrate division of the district court alleging that he was entitled to additional compensation because I.C. § 38–1202(c) required Nelson to pay Knopp on a gross volume basis. The magistrate in the small claims department was not persuaded and he entered judgment for Nelson. Knopp appealed within the magistrate division, as allowed by I.C. § 1–2311, resulting in a trial de novo before another magistrate.

In the second trial, ruling from the bench, the magistrate made the following statements.

In ruling in this case, the Court would note that pursuant to [Knopp's] Exhibit # 1, the difference due [Knopp] between gross scale or net scale would be $295.75. The primary issue in this case [is] how [Knopp] was to be paid.... Now, ac-

cording to the testimony of [Knopp] he was to be paid for skidding at the rate of nine dollars. It's his testimony there was no agreement concerning whether that figure was net or gross. According to the testimony of [Nelson], [Knopp] was to be paid nine dollars net.

Now, the party who brings the lawsuit has the burden of pleading and proving his case by a preponderance of the evidence. In this case, I don't know what the agreement was. Whether it was nine dollars net or nine dollars gross. So in that respect Mr. Knopp, I'd have to say you failed to persuade me by a preponderance of the evidence that the agreement was for nine dollars gross.

The magistrate next examined whether payment on a net scale basis contravenes I.C. § 38–1202(c). In construing the effect of this statute the magistrate relied upon the following language from our Supreme Court in *Toivo Pottala Logging, Inc. v. Boise Cascade Corp.*, 112 Idaho 489, 733 P.2d 710 (1987). "This Court cannot interpret I.C. § 38–1202(c) as enabling loggers to disregard merchantability standards contracted for with the mill owner. Therefore, the contract entered into by Pottala and Boise Cascade is not contrary to the language of I.C. § 38–1202(c)." *Id.* at 492, 733 P.2d at 713. The magistrate then concluded:

By analogy, if we apply that case to this fact situation I cannot say that the agreement, assuming it was for nine dollars net, contravenes 38–1202(c) and based on the evidence presented I am unable to find by a preponderance of the evidence that the agreement for payment was nine dollars gross. If I did so find nine dollars gross, of course the Court's judgment would be in favor of [Knopp], but since I can't find it was for nine dollars gross then I have to look whether it was for some other method that contravenes public policy and I cannot so find.

The above oral findings and conclusions later were restated in the magistrate's memorandum opinion dismissing Knopp's action. Knopp appealed to the district court.

The district court upheld the magistrate's findings and conclusions. The court further held that I.C. § 38–1201 requires contracts of the type sought to be enforced by Knopp to be in writing. The court concluded that Knopp could not enforce the agreement absent such a writing. Knopp then pursued this appeal.

Our primary task in this appeal is to determine the effect of I.C. § 38–1202(c). Amended in 1979, section 38–1202(c) provides:

Forest Products Measurement. For the purpose of payment for logging or hauling logged forest products only, forest products shall be measured by gross weight, or by gross volume converted to gross decimal "C." Measurement may be determined by a sampling process.

It is axiomatic that in construing statutes courts should consider and give effect to legislative intent. The record in *Toivo Pottala Logging, Inc. v. Boise Cascade Corp,* *supra*, contains exhaustive evidence of legislative intent regarding section 38–1202(c). We will take judicial notice of that record. I.C. § 9–101; I.R.E. 201.

Prior to its amendment in 1979, section 38–1202(c) provided that any one of several methods found in a state manual for log scaling shall be used in obtaining a quantitative measurement of forest products. "Scaling" is a term of art unique to the logging industry. Simplified, scaling is the measurement of the board foot volume and measurement of the percentage of unsound material in a log, determined initially by the length and diameter of the scaling cylinder of a log. Gross scale is the total board foot contents of the scaling cylinder of the log before deductions for defects are made. Net scale, of course, is the board foot sum after deductions for defects.

The Legislature received evidence that under the existing log scaling practices, smaller logs commonly being harvested either were not measured or were incapable of accurate measurement by log scaling. Consequently, loggers were not being adequately compensated for all logs hauled and delivered. Moreover, owing to the dif-

ferent log scaling methods available, measurements were variable and, at times, disparate. Finally, because all methods of log scaling were subject to the foibles of human judgment, the system was deemed faulty.

Responding to the complaints of loggers, the Legislature amended section 38–1202(c), removing "a faulty system of measurement by replacing it with a verifiable method of measurement." *Toivo Pottala Logging, Inc. v. Boise Cascade Corp.*, 112 Idaho at 492, 733 P.2d at 713. Measurement of forest products by "gross weight" was intended to remove the variables occurring in log scaling methods, the error of human judgment, and more adequately measure the volume of all forest products hauled and delivered. Nothing this simple could remain untouched. An alternative "gross volume" method of measurement was added before the Legislature adopted the amendment in 1979.[1] Notably, the Legislature specifically required use of the gross weight or gross volume method of measurement to determine "payment for logging or hauling logged forest products only." Therefore, the Legislature sought to ensure that loggers were paid more fairly for forest products logged or hauled and delivered to the mills. *Toivo Pottala, supra.* The language in section 38–1202(c) is mandatory. Accordingly, we construe section 38–1202(c) as requiring payment, for forest products hauled and delivered, to be based on gross weight or gross volume (gross scale) and not on net scale.

The lower courts' reliance on *Toivo Pottala* is misplaced. The logger in *Toivo Pottala* was paid on a gross weight basis. However, as our Supreme Court noted, the parties had contracted for a standard of merchantability. Accordingly, the logger was paid on a gross weight basis only for all merchantable logs delivered at the mill. The logger was not paid for all logs he cut and skidded. The Supreme Court concluded that a standard of merchantability did not contravene section 38–1202(c). In dis-

cussing the effect of section 38–1202(c), the Idaho Attorney General reached a like conclusion.

The mill owner is free to negotiate a fair price for forest products delivered for scaling, including any loss or damage he may bear because he must pay for culls. Also, mill owners may negotiate by contract for quality control, utilization, merchantability standards, and bonuses and penalties to discourage delivery of culls and other unusable material, as long as the basis thereof is not determined by a reduction in gross scale.

1980 Op.Att'y.Gen. 48, 51 (Idaho 1980).

The district court analogized that payment on a gross volume basis subject to a standard of merchantability would practically be the same as payment on a net scale basis. We disagree. As noted, log scaling did not always produce accurate total volume measurements. Also, some mills could utilize the defective portions of logs not reflected in a net scale measurement without incurring an obligation to pay the logger for these portions. There is no like deduction for defect in measuring by gross weight. Moreover, merchantability cannot be used to change the actual measurement of gross weight. As agreed between the parties, only logs meeting a standard of merchantability may be delivered and weighed or bonuses and penalties for merchantability may attach to the payment amount. But in any event, payment must be based on gross weight or gross volume.

Furthermore, it is a common practice in the logging industry to declare as merchantable logs that are at least one-third sound. This industry standard must be understood in order to negotiate for logging work. A gypo or other logger must consider the probable amount of defect contained in any timber sale when bidding for work to be furnished. In this regard, we echo an observation made by our Supreme Court in *Toivo Pottala*. A logger may cut and skid logs that he will not be paid for

---

1. Legislative history suggests that the alternative gross volume method of measurement was placed in the 1979 amendment for the benefit of small lumber mills which did not have or were

unable to obtain large truck scales. However, the statutes do not limit the use of gross volume measurement to situations where truck scales are not available.

because of disease or defect. A logger is not free to deliver all logs, brush, forest growth or other forest products (defective or not) and expect to be paid for it. Nevertheless, a logger who understands industry practices and standards can reduce his labor costs. The gross weight basis of payment further supplies more adequate compensation for labor performed.

Under the facts of this case, we hold that the lower courts erred in concluding Knopp was not entitled to payment on a gross volume basis. The evidence clearly shows Knopp was paid on a net scale basis in contravention of section 38–1202(c). It is immaterial whether Knopp proved the terms of payment under the agreement were for net scale or gross scale because section 38–1202(c) requires payment based on gross scale in this instance. The magistrate's finding that Knopp is entitled to an additional $295.75 on a gross scale basis is supported by substantial evidence. There is no evidence indicating the parties agreed to other terms which may affect the amount due Knopp.

■ We turn next to the district court's determination that I.C. § 38–1201 requires contracts of the type here to be in writing. Prior to the 1979 amendment, this section provided:

> The method of scaling the various forest products for commercial purposes shall be in accordance with the provisions of section 38–1202(c), provided, however, that nothing contained herein shall prohibit anyone from using a system of volumes determination by sample, by weight, or by a combination of these systems or any other system of determining volume, provided that the basis for determining board foot volumes shall be in accordance with the provisions of this act, and provided further that such method must be agreed upon in writing by all parties concerned.

This section referred to an entirely different section 38–1202(c) and allowed several alternative methods of log scaling, but the parties had to express their agreement in writing. The reasoning is readily apparent—a writing would eliminate any dispute as to the method of log scaling to be used.

When section 38–1201 was amended, the Legislature simply deleted some language. This section currently provides:

> The method of scaling the various forest products for commercial purposes shall be in accordance with the provisions of section 38–1202(c), Idaho Code, provided that the basis for determining board foot volumes shall be in accordance with the provisions of this act, and provided further that such method must be agreed upon in writing by all parties concerned.

Consequently, the 1979 amendments to sections 38–1201 and 38–1202(c) limited the methods of measurement with respect to payment for logging or hauling logged forest products to gross weight or gross volume.

Alternative methods of log scaling for other commercial purposes may be elected between the parties so long as the method chosen comports with the National Forest Log Scaling Handbook. I.C. § 38–1220. A written agreement is required between parties who are free to elect a method of log scaling. I.C. § 38–1201. A writing is not required for agreements relating to logging or hauling logged forest products; no optional methods of measurement are available.

Moreover, there was no dispute here between Knopp and Nelson as to the *method* for determining the volume of timber skidded. The seller and the purchasers of the timber were involved in this process. After skidding and loading, the logs were hauled to different delivery points. Some of the loads were scaled piece by piece to determine both gross and net scale, showing the board foot volume of each log and the total volume of each load. Other loads were merely weighed, but by using the scaled loads as samples, the weight of these loads was converted to a board foot measurement of each load. Thus, the *method* for determining the gross and net volume of all logs skidded was never disputed and was never an issue between the parties in this case. The dispute here was only over whether Knopp was to be paid

for the gross scale or the net scale. This dispute is settled by the requirements of I.C. § 38–1202(c). Accordingly, we hold the district court erred in concluding that the agreement between Knopp and Nelson had to be in writing.

The appellate decision of the district court and the magistrate's dismissal of Knopp's action are reversed. We remand for entry of judgment in the trial court in favor of Knopp in the amount of $295.75 plus interest from the date that the money was due. I.C. § 28–22–104(2). Costs to appellant Knopp. Attorney fees have not been requested.

WALTERS, C.J., and HART, J. pro tem, concur.