192 P.3d 1095

**David William HOOTS, Petitioner–Appellant,**

v.

**Olivia CRAVEN, Respondent.**

No. 33327.

Court of Appeals of Idaho.

June 6, 2008.

Rehearing Denied June 6, 2008.

Review Denied Sept. 8, 2008.

272

David William Hoots, Boise, pro se appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark A. Kubinski, Deputy Attorney General, Boise, for respondent.

SUBSTITUTE OPINION

THE COURT'S PRIOR OPINION
DATED MARCH 6, 2008 IS
HEREBY WITHDRAWN

GUTIERREZ, Chief Judge.

David William Hoots appeals from the district court's dismissal of his petition for writ of *habeas corpus*. We affirm.

## I.

## BACKGROUND

In 1996, Hoots was convicted on three counts of lewd conduct with a minor under sixteen years and received a unified sentence of thirty years with one year determinate for each count, all sentences to run concurrently. On March 26, 2001 he was released on parole and resumed his residence in northern Idaho. One year later, Hoots was cited for driving under the influence of alcohol (DUI). He was not arrested at that time as the Idaho State Police were awaiting results from a blood draw to determine his blood alcohol concentration. Hoots sustained significant injuries in the crash which led to the citation, including broken ribs and head trauma. Hoots's parole officer, Kevin Gentry, sent a request to Olivia Craven, the Executive Director for the Idaho Commission of Pardons and Parole, for a warning letter regarding this incident. In lieu of revoking Hoots's parole, he was warned that his conduct was contrary to parole conditions, but that he would be granted a second chance to succeed on parole. The warning letter expressly notified Hoots that the incident could be used against him in a future parole revocation proceeding if additional evidence was discovered or if further parole violations occurred. Hoots entered a guilty plea to an amended charge of inattentive driving on August 23, 2002, as his blood alcohol content was found to be below the threshold for DUI.

In January of 2003, Hoots was arrested for domestic battery, which was later reduced to battery, and eventually dismissed. Again Gentry requested a warning letter for Hoots, declaring that he was performing relatively well on parole and should be given a third chance. Two months later, Hoots was again arrested, this time for stalking and three instances of violating a protection order. While Hoots was jailed on these charges, Gentry served him with an agent's warrant to detain him until further action could be taken by the Commission of Pardons and Parole (the Commission). That same evening, Gentry requested that Hoots submit to a breathalyzer examination while in custody, based on the belief of jail staff that Hoots was under the influence. Hoots refused the breath test. A Commission warrant was issued on April 1, 2003. The charges for stalking and violation of a protection order were eventually dismissed later in the year.

A report detailing Hoots's violations of parole was prepared on March 28, 2003, and a violation hearing was held in May before a Commission hearing officer. During that hearing, Hoots was informed that he would be released from custody to continue on parole if he was "found innocent of *all* charges." If he was found to have violated his parole, a second hearing would be held to determine whether to revoke his parole or continue it with additional conditions. The hearing officer found Hoots guilty of all three violations as charged. Hoots's first violation, of Parole Agreement conditions 5(a) and 5(b), arose because he failed to "obey all municipal, county, state, and federal laws" and to "conduct himself in a manner which [was] not, nor [was] intended to be, harmful to himself or others." Hoots's second violation is of condition 1(c) of the Sex Offender Agreement of Supervision (SOAS), which stated that he would not "purchase, produce, possess or consume alcoholic beverages, nor ... frequent any establishment where the sale of alcoholic beverages is the primary source of business." The third violation stems from Parole Agreement conditions 5(c) and 6(c) wherein Hoots agreed to "follow written or oral instructions of the parole officer or Parole Commission" and to "freely cooperate and voluntarily submit to medical and chemical tests and examinations for the purpose of determining if parolee is using or under the influence of alcohol or narcotics."

Based on the findings at the parole violation hearing, a revocation hearing was held on September 11, 2003. The Commission

adopted the findings of the hearing officer, and revoked Hoots's parole. The primary basis for the revocation was Hoots's conviction for inattentive driving, which violated conditions 5(a), 5(b), and 1(c) of the SOAS, and for refusing to submit to a breathalyzer test, which violated conditions 5(c) and 6(c). Numerous other issues were mentioned by the Commission, including Hoots's decreasing participation in therapy programs and his improper sexual relationship with a married woman that he did not disclose to Gentry prior to his arrest for domestic battery.

After the charges of battery, stalking, and violations of a protection order were dismissed, Hoots wrote to the Commission requesting that he be released, since he was "found innocent" of those criminal charges. The Commission responded, explaining that he would have to have been found innocent of the parole violations in order to be released. His parole violations and revocation were not based on the then-pending charges which were later dismissed; therefore the dismissals did not affect his parole revocation or incarceration. Thereafter, Hoots filed a *pro se* petition for writ of *habeas corpus*, asserting that he was illegally imprisoned by the Commission's improper use of pending criminal charges that were later dismissed. In his prayer for relief, Hoots requested that he be released from custody, that he be monetarily compensated for the false imprisonment, and that he not be subject to further parole supervision. The state responded with a motion for summary judgment. After considering Hoots's reply to the state's motion, the district court dismissed the petition pursuant to Idaho Code Section 19–4209(1)(e), which allows dismissal of a *habeas corpus* petition when the relief sought is monetary compensation. Despite Hoots's motion to amend his petition to eliminate that portion of the prayer for relief, the district court refused to reconsider the dismissal. Hoots appeals.

## II.

## STANDARD OF REVIEW

■ The decision to issue a writ of *habeas corpus* is a matter within the discretion of the court. *Johnson v. State*, 85 Idaho 123, 127, 376 P.2d 704, 706 (1962); *Brennan v. State*, 122 Idaho 911, 914, 841 P.2d 441, 444 (Ct.App.1992). When we review an exercise of discretion in a *habeas corpus* proceeding, we conduct a three-tiered inquiry to determine whether the lower court rightly perceived the issue as one of discretion, acted within the boundaries of such discretion, and reached its decision by an exercise of reason. *Brennan*, 122 Idaho at 914, 841 P.2d at 444; *Sivak v. Ada County*, 115 Idaho 762, 763, 769 P.2d 1134, 1135 (Ct.App.1989). If a petitioner is not entitled to relief on an application for a writ of *habeas corpus*, the decision by the petitioned court to dismiss the application without an evidentiary hearing will be upheld. *Brennan*, 122 Idaho at 917, 841 P.2d at 447. When appealing from the denial of a petition for writ of *habeas corpus*, the petitioner has the burden of establishing error. *Id.* at 914, 841 P.2d at 444.

## III.

## DISCUSSION

Hoots claims that the Commission violated his constitutional rights by revoking his parole based on crimes for which he had not been convicted. He also asserts that the district court erred by dismissing his petition for writ of *habeas corpus* instead of allowing him to amend it to comply with the Idaho Code. The state counters that allowing an amendment would have been futile, as Hoots has not stated a claim upon which relief could have been granted.

■ The writ of *habeas corpus* is not a statutory remedy but rather a remedy recognized and protected by Article I, Section 5 of the Idaho Constitution. *Mahaffey v. State*, 87 Idaho 228, 231, 392 P.2d 279, 280 (1964); *Drennon v. Fisher (Drennon II)*, 141 Idaho 942, 944, 120 P.3d 1146, 1148 (Ct.App.2005); *Dopp v. Idaho Comm'n of Pardons & Parole*, 139 Idaho 657, 660, 84 P.3d 593, 596 (Ct.App. 2004). The legislature, absent certain contingencies, is without power to abridge this remedy secured by the Idaho Constitution, but may add to the efficacy of the writ. *Mahaffey*, 87 Idaho at 231, 392 P.2d at 280. As an extraordinary remedy, the writ of *habeas corpus* is not subject to the rules of

technical pleading nor its swift relief hindered by captious objections or fine spun theories of procedure, and a petition therefore will not be scrutinized with technical nicety. *Johnson,* 85 Idaho at 127, 376 P.2d at 706; *Drennon II,* 141 Idaho at 944, 120 P.3d at 1148. *Habeas corpus* statutes should be construed so as to promote the effectiveness of the proceeding. *Mahaffey,* 87 Idaho at 231, 392 P.2d at 280; *Drennon II,* 141 Idaho at 945, 120 P.3d at 1149. *Habeas corpus* proceedings are civil in nature and, generally, the Idaho Rules of Civil Procedure apply. I.C. § 19–4208; I.R.C.P. 1(a); *Quinlan v. Idaho Comm'n of Pardons & Parole,* 138 Idaho 726, 729, 69 P.3d 146, 149 (2003); *Jacobsen v. State,* 99 Idaho 45, 50, 577 P.2d 24, 29 (1978), *overruled on other grounds by Struve v. Wilcox,* 99 Idaho 205, 579 P.2d 1188 (1978); *Drennon II,* 141 Idaho at 943, 120 P.3d at 1147.

■ The district court entered an order dismissing Hoots's petition, citing I.C. § 19–4209(1)(e), which states in relevant part that the court may dismiss a petition "prior to service of the petition on the respondent, if the court finds [t]he relief sought is monetary damages or the return of property." Although Hoots's petition sought monetary compensation for false imprisonment, Hoots's request for relief also included non-monetary relief, i.e., release from custody and from further parole supervision. Instead of dismissing the entire petition, the district court should have dismissed the erroneous portion of Hoots's petition and considered the merits of his claims as they related to his remaining requests for relief. I.C. §§ 19–4209(1)(e),(2)(c).[1]

■ After receiving the notice of dismissal, Hoots moved to amend his petition in order to eliminate the prayer for monetary damages. The district court denied Hoots's motion to amend because the evidence in the record contradicted his claims; therefore no relief could be granted. However, when dealing with petitions for *habeas corpus* submitted by persons on their own behalf without the advice, aid, and assistance of counsel, a court cannot require the same high standards that might be imposed on members of the legal profession. *Johnson,* 85 Idaho at 128, 376 P.2d at 706. In general, liberality rather than strictness should control in considering an application for a writ of *habeas corpus.* *Id.* The principles judicially established for the delimitation of *habeas corpus* actions must be construed and applied so as to preserve—not destroy—constitutional safeguards of human life and liberty. *Id.* at 129, 376 P.2d at 707.

■ Hoots argues that these principles could have been furthered by the district court through the proper application of I.R.C.P. 15(a). Permission to amend a civil pleading is to be "freely given when justice so requires." I.R.C.P. 15(a). The Idaho Supreme Court has stated that the purpose of this rule is, in part, to allow the best chance for each claim to be determined on its merits rather than on some procedural technicality. *Clark v. Olsen,* 110 Idaho 323, 326, 715 P.2d 993, 996 (1986); *Drennon II,* 141 Idaho at 945, 120 P.3d at 1149. Had the district court allowed Hoots to amend his petition, thereby responding to the technically improper prayer for relief, the merits of his claim would have been addressed. Since the grant or denial of an opportunity to amend is within the discretion of the district court, the decision will not be disturbed absent an abuse of discretion. *Wells v. U.S. Life Ins. Co.,* 119 Idaho 160, 166, 804 P.2d 333, 339 (Ct.App. 1991); *Bissett v. State,* 111 Idaho 865, 868, 727 P.2d 1293, 1296 (Ct.App.1986). However, the refusal to allow an amendment, where the record contains no allegations which, if proven, would entitle the petitioner to the relief claimed, is not an abuse of discretion. *Wells,* 119 Idaho at 167, 804 P.2d at 340.

---

1. Idaho Code Section 19–4209 states in relevant part:

**Procedures governing prisoner habeas corpus proceedings**—(1) The court may dismiss with prejudice a petition for writ of habeas corpus under this section, in whole or in part, prior to service of the petition on the respondent, if the court finds:

. . . .

(e) The relief sought is monetary damages or the return of property.

(2) If the court finds that the petition should not be dismissed, then: . . . .

(c) If the court dismisses the petition in part, the court may specify which issues and/or allegations remain at issue for response . . . .

We conclude that, despite the error in the district court's initial order of dismissal, Hoots's motion to amend was properly denied because he was not entitled to any of the relief claimed. Hoots's initial petition was properly dismissed, although not for the reason originally stated by the district court. *See Matter of Estate of Bagley,* 117 Idaho 1091, 1093, 793 P.2d 1263, 1265 (Ct.App.1990) (an appellate court may affirm a lower court's decision on a legal theory different from the one applied by that court).

■■■ Hoots claims that the Commission invalidly revoked his parole using criminal charges which were subsequently dismissed. He also asserts that the misdemeanor conviction which occurred prior to his parole revocation could not serve as a basis for revocation because it had already been addressed in a warning letter. However, the parole Commission has broad discretion in making its parole decisions. *Ybarra v. Dermitt,* 104 Idaho 150, 151, 657 P.2d 14, 15 (1983); *Drennon v. Craven* (*Drennon I*), 141 Idaho 34, 35, 105 P.3d 694, 695 (Ct.App.2004). Generally, when a court reviews a parole decision, its inquiry is only whether there is a rational basis in the record for the Commission's conclusions—not whether the determination is supported by the preponderance of the evidence, or even by substantial evidence. *Drennon I,* 141 Idaho at 35–36, 105 P.3d at 695–96. Furthermore, there is no constitutionally protected right to parole. *Hays v. Craven,* 131 Idaho 761, 764, 963 P.2d 1198, 1201 (Ct.App.1998). The United States Supreme Court has held that no constitutional right attaches to the mere possibility of conditional liberty. *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2103–04, 60 L.Ed.2d 668 (1979); *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The Idaho Supreme Court has concluded that Idaho

statutes do not provide a legitimate expectation of parole, but merely the possibility thereof. *See Izatt v. State,* 104 Idaho 597, 600, 661 P.2d 763, 766 (1983).

■■■ At Hoots's parole violation proceeding, Gentry presented evidence regarding several violations of Hoots's conditions of parole. During the incident which led to a conviction for inattentive driving, Hoots violated three conditions of parole: he failed to obey all laws of the state, he conducted himself in a manner which was harmful to himself and others, and he consumed alcohol. More importantly, Hoots admitted to consuming alcohol on several occasions,[2] he acknowledged that his conviction violated state law, and he supplied details about the injuries he sustained in the crash, effectively admitting to all three violations. Hoots received a warning letter because of this incident, and now claims that it cannot be used against him as a basis for a parole violation. This assertion is misplaced. The warning letter informs Hoots that the information contained in the report can be used against him in a future parole violation hearing if other violative conduct occurs. Therefore, the fact that Gentry recommended and Craven chose to continue Hoots on parole with a warning instead of a full violation does not end the Commission's ability to consider those actions as violations of his parole and a basis for revocation at a later time.

■■■ There was also evidence presented at the violation hearing that Hoots violated conditions of his parole a second time: he refused to follow oral instructions from his parole officer and refused to cooperate by voluntarily submitting to medical and chemical tests to determine if he was under the influence of alcohol. After Hoots's third arrest while on parole, Gentry served an agent's warrant on him to detain him for parole violations. At that time Hoots re-

---

**2.** Hoots contests the violation of 1(c) SOAS, regarding abstention from alcohol, due to the fact that the agreement was signed ten months after his release on parole and he was faced with the choice of signing the agreement or losing his parole. He claims that it was signed under duress, and therefore cannot be used against him. Bowing to events, even if one is not happy about

them, is not equivalent to being coerced. *State v. Garcia,* 143 Idaho 774, 779, 152 P.3d 645, 650 (Ct.App.2006); *see also United States v. Miller,* 589 F.2d 1117, 1132 n. 13 (1st Cir.1978). The voluntariness of Hoots's actions was not impaired simply because he was faced with two unpleasant choices. *Garcia,* 143 Idaho at 779, 152 P.3d at 650.

 

fused to submit to a breathalyzer test. He acknowledged at the violation hearing that he refused to comply with Gentry's request. Hoots claims that Gentry no longer had authority over him after the agent's warrant was served, because his parole was effectively eliminated and he was remanded back to the custody of the state. However, this claim does not take into consideration the process required to actually revoke parole. Hoots was afforded two hearings—one to determine if he had in fact violated a condition of parole, and one to determine whether to continue parole or revoke it—prior to the official act of the Commission revoking his parole. At no time prior to the Commission's official revocation was Hoots terminated from parole. Therefore he was still subject to his parole agreement despite his detention, and his refusal to submit to a breathalyzer test violated two conditions of his parole.

The Commission mentioned the existence of the then-pending charges for battery, stalking, and violation of a protection order, but it made no finding as to his guilt of those charges. The decision to revoke Hoots's parole was based on his conviction for inattentive driving and his refusal to submit to a breathalyzer test. The Commission adopted the findings of the hearing officer, who concluded that: (1) Hoots failed to obey all municipal, county, and state laws and conducted himself in a manner which was harmful to himself and others by driving his car after consuming alcohol; (2) Hoots failed to remain alcohol free by admittedly consuming alcohol; and (3) Hoots failed to voluntarily submit to chemical tests and obey all written or oral instructions of his parole officer by refusing to submit to a breathalyzer test. Each of these violations is supported by conduct unrelated to the battery, stalking, or violation of a protection order charges. If the district court had allowed Hoots to amend his petition to eliminate the prayers for relief for monetary compensation, his petition would not have survived summary judgment. *See* I.R.C.P. 56(c). There were no issues of material fact as to the validity of the Commission's revocation of parole, and the state was entitled to judgment as a matter of law. Therefore, the district court did not abuse its discretion by dismissing Hoots's

petition for writ of *habeas corpus* or by denying amendment of the petition.

### IV.

### CONCLUSION

Hoots's petition for writ of *habeas corpus* failed to state a constitutional claim upon which relief could have been granted. The district court did not abuse its discretion by dismissing his petition or denying his motion to amend. Accordingly, the order of the district court dismissing Hoots's petition for writ of *habeas corpus* is affirmed.

Judge LANSING and Judge PERRY concur.

