## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 37184

| | | |
|---|---|---|
| LERAJJAREANRA O-KEL-LY, | ) | 2011 Unpublished Opinion No. 309 |
| | ) | |
| Petitioner-Appellant, | ) | Filed: January 7, 2011 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| JEFF HENRY, Warden of the Idaho | ) | THIS IS AN UNPUBLISHED |
| Maximum Security Institution; STATE | ) | OPINION AND SHALL NOT |
| COMMISSION OF PARDONS & PAROLE; | ) | BE CITED AS AUTHORITY |
| OLIVIA CRAVEN, Executive Director of | ) | |
| the State Commission of Pardons & Parole, | ) | |
| and CHERYL YANCEY; CONNIE | ) | |
| MC ROAN; (whose true first name is | ) | |
| unknown to petitioner) YOUNG; (whose true | ) | |
| first name is unknown to petitioner) | ) | |
| MATTHEW; JOHN and JANE DOES 1-5, | ) | |
| Members of the State Commission of Pardons | ) | |
| & Parole; TEREMA CARLIN and JOHN | ) | |
| and JANE DOES 1-5, Employees of the Idaho | ) | |
| Department of Corrections, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Daniel C. Hurlbutt, District Judge.

Order dismissing petition for writ of habeas corpus, <u>affirmed</u>.

Lerajjareanra O-Kel-Ly, Boise, pro se appellant.

Hon. Lawrence G. Wasden, Attorney General; Krista L. Howard, Deputy Attorney General, Boise, for respondents.

_____

LANSING, Judge

Lerajjareanra O-Kel-Ly (hereinafter Petitioner), a pro se inmate, appeals the district court's order dismissing his petition for a writ of habeas corpus.

# I.

## BACKGROUND

Petitioner filed a petition for a writ of habeas corpus after being denied parole. According to his allegations, in preparation for his parole hearing, he was provided a parole questionnaire to answer and was interviewed by Cheryl Yancey. Yancey did not tell Petitioner at that time what her recommendation to the Commission of Pardons and Parole (Commission) would be. However, on November 26, 2007, Petitioner received a copy of Yancey's recommendation that parole be denied and that Petitioner be passed to his full-term release date. Yancey's recommendation was based on Petitioner's extensive criminal history, lack of rehabilitative programming, disciplinary problems while in prison, and danger to society. Petitioner was allowed to respond and sent his response that same day, November 26, 2007, to be delivered to his caseworker, David Vehling. However, this response was not timely delivered to the Commission.

Petitioner's parole hearing occurred on December 3, 2007, before the Commission. Petitioner discussed his name change from Steven Wayne Rogers to Lerajjareanra O-Kel-Ly, his contention that certain disciplinary offense reports (DORs) against him had been fabricated, his lack of DORs for over a year, his desire to renounce his American citizenship, and his lack of access to rehabilitative programming. The Commission questioned Petitioner concerning his motives to change his name and renounce his American citizenship, expressing concern that he was doing these things to avoid the registration requirements for his past sex crime. The Commission voiced its concern about Petitioner's history of sexual misconduct and commented that his actions both inside and outside of prison did not show that he was safe to release. The Commission also noted reports that Petitioner had asked prison staff what types of things would get him into administrative segregation, to which Petitioner replied that he did ask this of a staff member because he was worried about getting falsified DORs in retaliation for his litigation activities. Petitioner later asserted this staff member was Respondent Carlin. The Commission ultimately denied Petitioner parole and passed him to his full-term release date. The Commission did not explain to Petitioner its rationale for its decision and did not allow him an opportunity to respond further at that point.

Two days after the hearing, the Commission received Petitioner's response to Yancey's recommendation and sent the response back to Petitioner with a note stating that it was too late

to be considered. Petitioner requested access to the information viewed by the Commission at his hearing, but there was no response to this request. In February of 2008, Petitioner requested expungement from his file of an entry that had been discussed at his parole hearing concerning his inquiry about the types of actions that would cause him to be placed into segregation. The request was denied and Petitioner appealed through the prison's internal appeals process. The decision was upheld at every appellate level.

Petitioner filed the present petition for habeas corpus relief on November 18, 2008. The Respondents filed a motion to dismiss for failure to state a claim upon which relief could be granted. After receiving Petitioner's response, the district court issued an order dismissing the petition in part and ordering Petitioner to amend his petition on the remaining claims. The claims that survived were:

> 1.    That Petitioner's due process rights under the United States and Idaho constitutions were violated by: the Commission; the Commission's practice, custom or policy; Carlin or John or Jane Does; Hearing Officer Yancey and/or John or Jane Doe(s); and Vehling and/or John and Jane Doe(s)
> 2.    That Petitioner's equal protection rights under the U.S. and Idaho constitutions were violated by: the Commission; Carlin or John and Jane Does; Hearing Officer Yancey or John and Jane Doe(s); and Vehling or John and Jane Doe(s)
> 3.    That the Commission and Carlin or John and Jane Does retaliated against Petitioner and violated his First Amendment rights.

Petitioner filed an amended petition to which Respondents filed an objection and response. On July 3, 2009, the district court issued an order dismissing all of Petitioner's claims except his due process claim against Vehling and/or John or Jane Does for not delivering Petitioner's reply to Yancey's recommendation in time for the Commission to consider it at Petitioner's parole hearing. Petitioner filed a motion to amend, alter, or be granted relief from the court's judgment and a motion for leave to amend his complaint for a second time to cure any pleading deficiencies in the claims that were dismissed.

Before the Petitioner filed these motions, the Respondents filed a motion to vacate the pending evidentiary hearing on Petitioner's remaining claim in anticipation of a new parole hearing the Commission had decided to grant to Petitioner so that it might consider his reply to Yancey's recommendation. The district court granted the motion. At the new parole hearing, the Commission reviewed the information it had received for the December 2007 hearing in addition to Petitioner's response to Yancey's recommendation that had not been considered

3

earlier. Petitioner was also given an opportunity to respond to the Commission. The Commission again elected to deny Petitioner parole and pass him to his full-term release date.

The Respondents filed the minutes of this second parole hearing with the district court, along with a motion to dismiss Petitioner's last remaining claim. The district court then dismissed the claim because it had been rendered moot by this new parole hearing. The district court also denied Petitioner's motions to amend the judgment and to amend his complaint.

Petitioner now appeals. He argues that the district court should not have dismissed his retaliation claim until it gave him a chance to further amend his petition to cure any deficiencies and until he could pursue further factual development through discovery. He also argues that the court erred in dismissing his equal protection claim for the same reasons and because it was in fact sufficiently pleaded. Additionally, he contends that the district court erred in determining that it had no authority to order relief other than that which he had already been afforded. This is because, he contends, the district court has the power to grant declaratory relief, which would allow Petitioner to bring a civil rights action for damages.[1]

## II.

## DISCUSSION

Whether to issue a writ of habeas corpus is a matter within the discretion of the court. *Quinlan v. Idaho Comm'n for Pardons & Parole*, 138 Idaho 726, 729, 69 P.3d 146, 149 (2003); *Hoots v. Craven*, 146 Idaho 271, 274, 192 P.3d 1095, 1098 (Ct. App. 2008). When we review an exercise of discretion in a habeas corpus proceeding, we conduct a three-tiered inquiry to determine whether the lower court rightly perceived the issue as discretionary, acted within the boundaries of such discretion, and reached its decision by an exercise of reason. *Hoots*, 146 Idaho at 274, 192 P.3d at 1098.

Habeas corpus proceedings are civil in nature, and generally the Idaho Rules of Civil Procedure apply. Idaho Code § 19-4208; *Hoots*, 146 Idaho at 275, 192 P.3d at 1099; *Drennon v. Fisher*, 141 Idaho 942, 943, 120 P.3d 1146, 1147 (Ct. App. 2005). In this case, the court considered materials outside of the pleadings before dismissing Petitioner's claims. When a

---

[1]     Petitioner raises additional issues in his reply brief. However, this Court will not address issues raised for the first time in an appellant's reply brief. *Suitts v. Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005); *Lightner v. Hardison*, 149 Idaho 712, 716 n.2, 239 P.3d 817, 821 n.2 (Ct. App. 2010).

court considers matters outside the pleadings on a motion to dismiss, the motion must be treated as one for summary judgment. *Hayes v. Conway*, 144 Idaho 503, 506-07, 163 P.3d 1215, 1218-19 (Ct. App. 2007); *Duvalt v. Sonnen*, 137 Idaho 548, 552, 50 P.3d 1043, 1047 (Ct. App. 2002). Summary judgment pursuant to Idaho Rule of Civil Procedure 56(c) is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Conway*, 144 Idaho at 507, 163 P.3d at 1219; *Duvalt*, 137 Idaho at 552, 50 P.3d at 1047. On appeal, we exercise free review in determining whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Duvalt*, 137 Idaho at 552, 50 P.3d at 1047. In assessing a summary judgment on a habeas corpus petition, we treat all uncontroverted allegations in the petition as true, and we liberally construe all controverted facts and draw all reasonable inferences in favor of the nonmoving party. *Drennon v. Craven*, 141 Idaho 34, 36, 105 P.3d 694, 696 (Ct. App. 2004); *Freeman v. Idaho Dep't of Corr.*, 138 Idaho 872, 875, 71 P.3d 471, 474 (Ct. App. 2003).

A. **Retaliation and Equal Protection Claims Concerning False Information in Petitioner's File**

Petitioner alleges that Carlin placed in Petitioner's file false information that Petitioner had asked how many DORs he would need to acquire to get into administrative segregation, indicating that he wanted to be placed there. Petitioner asserts this was in retaliation for his filing grievances, bringing civil actions against prison officials, and helping other inmates with their legal cases against prison officials. Petitioner alleges this information was used to place him and keep him in administrative segregation, which adversely affected his conditions of confinement because he could not participate in rehabilitative programming that would make him more suitable for parole. He contends the false information was also used to deny him parole. Petitioner asserts that retaliation is evidenced by the fact that he was questioned "in a negative tone and manner" about this report in his file and because the minutes of the first parole hearing mention his litigation activities and DORs but allegedly provide no other insight into the Commission's reasons for denying parole. Therefore, he contends, the district court erred in dismissing this claim.

Petitioner further argues that the district court erred in dismissing his equal protection claim by determining that Petitioner had failed to identify other similarly situated prisoners and how they were being treated differently by Carlin. Petitioner argues he made the requisite

5

showing by stating below that Carlin does not put false information into the files of other prisoners who have Carlin as a case manager or custody manager.

To state a First Amendment retaliation claim an inmate must allege that he engaged in an activity protected by the First Amendment, that the State impermissibly infringed on his right to engage in the protected activity, and that the retaliatory action was not reasonably related to a legitimate penological purpose. *Lightner v. Hardison*, 149 Idaho 712, 720, 239 P.3d 817, 825 (Ct. App. 2010); *Drennon*, 141 Idaho at 39, 105 P.3d at 699. Some courts also require an inmate to show that his protected conduct was a substantial or motivating factor for the State's action. *Drennon*, 141 Idaho at 39, 105 P.3d at 699. In *Drennon*, a habeas corpus petitioner--claiming retaliatory conduct in the denial of parole due to his litigation activities--had alleged that he was repeatedly asked at his parole hearing what gave him the right to file legal actions and assist other inmates in doing so, and the parole hearing minutes did not give any insight into the Commission's reason for denying parole except for mentioning that the petitioner underwent prior disciplinary actions for litigative activities. *Id.* at 38 n.2, 40, 105 P.3d at 698 n.2, 700. We held that, based on these facts, the petitioner had sufficiently supported the allegation that his protected litigation activities were a substantial or motivating factor in the Commission's decision to deny him parole so as to survive summary judgment. *Id*. at 40, 105 P.3d at 700.

The Equal Protection Clause is designed to assure that those persons similarly situated with respect to governmental action are treated similarly. *City of Cleburne*, *Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *State v. Missamore*, 119 Idaho 27, 33, 803 P.2d 528, 534 (1990); *State v. Hayes*, 108 Idaho 556, 560, 700 P.2d 959, 963 (Ct. App. 1985). *See also Aeschliman v. State*, 132 Idaho 397, 401, 973 P.2d 749, 753 (Ct. App. 1999) (holding that the Equal Protection Clause requires that "all persons in like circumstances should receive the same benefits and burdens of the law"). To establish an equal protection claim a claimant must allege a deliberate plan of discrimination based on some unjustifiable classification. *Henson v. Dep't of Law Enforcement*, 107 Idaho 19, 23, 684 P.2d 996, 1000 (1984); *Hayes*, 108 Idaho at 560, 700 P.2d at 963. *See also McCleskey v. Kemp*, 481 U.S. 279, 292 (1987) (holding that "a defendant who alleges an equal protection violation has the burden of proving 'the existence of purposeful discrimination'"). The Idaho Supreme Court in *Henson* favorably cited a Ninth Circuit case for the proposition that a claimant must show that the action complained of was based on an impermissible ground in order to establish a prima facie case of equal protection. *Henson*, 107

Idaho at 24, 684 P.2d at 1001 (citing *Kuzinich v. County of Santa Clara*, 689 F.2d 1345, 1349 (9th Cir. 1982)).

We conclude that Petitioner failed to state and support a retaliation or an equal protection claim based on the allegedly falsified information placed in his file. As stated above, for both claims Petitioner was required to show that the action complained of was based on either a retaliatory motive or an impermissible classification. Although Petitioner stated in a conclusory fashion that Carlin placed the allegedly false information in his file in retaliation for Petitioner's litigation activities and based on the impermissible classification as a "jailhouse lawyer," Petitioner failed to allege any facts that support such a conclusion. A petition must contain a concise statement of facts comprising a claim. *Freeman v. State, Dep't of Corr.*, 115 Idaho 78, 79, 764 P.2d 445, 446 (Ct. App. 1988). Petitioner has not described any facts or circumstances to support his conjecture that it was his litigation activities that prompted Carlin to document Petitioner's question concerning how many DORs he would have to amass before he would be moved to administrative segregation. Allegations that are based on mere conjecture and assumptions, without facts establishing a nexus between protected conduct or classification and the challenged state action, are insufficient to show a prima facie case of retaliation or violation of equal protection rights. Therefore, even assuming the information in Petitioner's file is false, because Petitioner failed to sufficiently allege or support either a retaliation or an equal protection claim, the district court did not err in dismissing these claims.

Furthermore, Petitioner has not shown any causal link between the allegedly false information in his file and his claimed injuries of being placed in administrative segregation and being denied parole. Petitioner had multiple DORs, which is a valid reason to place an inmate in administrative segregation; Petitioner states no facts showing that it was the allegedly false information about his inquiry, rather than his actual disciplinary history, that was the motivating factor for his placement in administrative segregation. Additionally, when the Commission mentioned the allegedly false entry in his record, Petitioner acknowledged that he *did* ask the question, but asserted it was not motivated by a desire to be in administrative segregation. There appears to have been no further discussion of the entry. There was, however, much discussion at the parole hearing about Petitioner's disciplinary problems while in prison, his lack of rehabilitative programming, and certain actions--such as changing his name and attempting to renounce his United States citizenship--which suggested to the Commission that he might be

7

trying to evade registration requirements should he be placed on parole. Thus, though there is ample evidence of legitimate reasons for denying parole, Petitioner failed to support his contention that the denial was based on the allegedly false information.

To the extent that Petitioner argues that the denial of parole itself was in retaliation for his litigation activities, he again fails to allege and support this claim. Although Petitioner was careful to use some of the language the petitioner in *Drennon* used to state his claim, *Drennon* is quite distinguishable from this case. Here, unlike in *Drennon*, Petitioner did not allege that he was repeatedly asked at his parole hearing "what gave him the right" to file legal actions and assist other inmates in doing so, which is a direct attack on those activities. Instead, Petitioner alleged only that he was asked about his multiple DORs and it was Petitioner, in response to the inquiry, who brought up his litigation activities in disputing some of those infractions. Although the Commission inquired into the status of that litigation, ultimately it stated that such litigation activities were not an appropriate topic of conversation at a parole hearing and the conversation was concluded. The Petitioner's allegations, which do not demonstrate any attack on his litigation activities, are distinguishable from the allegations we held sufficient to withstand summary judgment in *Drennon*. Also distinguishing *Drennon*, the parole hearing minutes in this case do give insight into the Commission's reason for denying parole other than petitioner's litigative activities. The Commission discussed Petitioner's disciplinary problems while in prison, his lack of rehabilitative programming, and other conduct that suggested an effort to evade sex offender registration requirements. As Petitioner has not sufficiently alleged or supported his allegation that the Commission's decision was substantially motivated by Petitioner's litigation activities, summary judgment on the retaliation claim was appropriate on this basis as well.

**B.** **Equal Protection Claim Concerning Failure to Deliver Petitioner's Response to the Parole Recommendation Report**

Petitioner argues that the district court erred in dismissing his equal protection claim against Vehling on a determination that Petitioner had failed to identify other similarly situated prisoners who were being treated differently by Vehling. Petitioner points to his assertion below that Vehling does not fail to deliver to the Commission responses to parole recommendation reports made by other inmates who have Vehling as a case manager.

Petitioner's equal protection claim against Vehling suffers from the same defect as his claims against Carlin. That is, Petitioner does not allege facts that support his conclusory

8

suspicion that the action complained of--Vehling's failure to submit Petitioner's response to the Commission in time for Petitioner's parole hearing--was based on Petitioner's litigation activities. We are given no indication of when Vehling actually received the response or whether the late disclosure to the Commission was even caused by Vehling. It was Petitioner's burden to provide some plausible basis to conclude that the delay in delivery of his response was an intentional act of Vehling and was a direct response to Petitioner's litigation activities. Because Petitioner did not allege or present evidence of such facts, he did not establish a prima facie case of an equal protection claim against Vehling, and the district court did not err in summarily dismissing the claim.

Furthermore, Petitioner's claimed injury--that he was denied parole in part because his response was not delivered to the Commission before the first parole hearing--is moot. The Commission convened another parole hearing specifically to consider Petitioner's response. Therefore, any injury Petitioner suffered from this alleged violation was rectified.

## C. Further Opportunity to Amend and Conduct Discovery on Retaliation and Equal Protection Claims

Petitioner argues that the district court erred by not allowing him to amend his petition a second time and by not ruling on his request to conduct discovery. According to Petitioner, because he is a pro se party he has a right to amend the complaint multiple times to correct any deficiencies and through discovery he could have gathered the information necessary to remedy these deficiencies.

A habeas corpus petition is analogous to a civil complaint. *Acheson v. Klauser*, 139 Idaho 156, 159, 75 P.3d 210, 213 (Ct. App. 2003). Leave to amend such pleadings is to be "freely given when justice so requires." I.R.C.P. 15(a). The purpose of this rule is to allow a claim to be determined on its merits rather than on some procedural technicality. *Clark v. Olsen*, 110 Idaho 323, 326, 715 P.2d 993, 996 (1986); *Drennon*, 141 Idaho at 945, 120 P.3d at 1149. This rule allows liberality in amending a complaint to cure procedural and technical defects. *Clark*, 110 Idaho at 326, 715 P.2d at 996; *Drennon*, 141 Idaho at 945, 120 P.3d at 1149. A motion to amend may be denied, however, where the amendment would be futile. *McCann v. McCann*, 138 Idaho 228, 237, 61 P.3d 585, 594 (2002) (holding that leave to amend should be freely given in the absence of "futility of amendment."); *Black Canyon Racquetball Club, Inc. v. Idaho First Nat'l Bank*, 119 Idaho 171, 175, 804 P.2d 900, 904 (1991) ("If the amended pleading does not set out a valid claim . . . or if the opposing party has an available defense such as a

9

statute of limitations, it is not an abuse of discretion for the trial court to deny the motion to file the amended complaint."). We review the grant or denial of an opportunity to amend a habeas petition for an abuse of discretion. *Hoots*, 146 Idaho at 275, 192 P.3d at 1099.

In this case, Petitioner's motion to amend his petition did not propose amendments that would have cured the fatal deficiencies--the failure to allege facts tending to show that Carlin and Vehling's alleged actions were prompted by Petitioner's litigation activities. Because allowing the amendment as proposed would have been futile, the district court did not abuse its discretion in denying Petitioner's motion to amend.

We have held that it is improper for a court to fail to address discovery requests before granting a motion for summary judgment, *Merrifield v. Arave*, 128 Idaho 306, 311, 912 P.2d 674, 679 (Ct. App. 1996), but we have also held that discovery cannot be used as fishing expedition. *Cf. Murphy v. State*, 143 Idaho 139, 148, 139 P.3d 741, 750 (Ct. App. 2006) (stating in the context of a post-conviction action that "[t]he UPCPA provides a forum for known grievances, not an opportunity to research for grievances"); *Aeschliman*, 132 Idaho at 401, 973 P.2d at 753 (holding that limiting discovery in post-conviction cases is justified "so that the prosecution will not be inundated with discovery requests from applicants who . . . are simply on fishing expeditions" and noting that in contrast to ordinary civil litigation, the typical financial disincentives against unfettered discovery generally do not exist in the post-conviction arena). Our Supreme Court has stated that the liberal rules of discovery for civil cases may not be appropriate in habeas corpus cases. *State v. Maynard*, 139 Idaho 876, 881, 88 P.3d 695, 700 (2004); *Jacobsen v. State*, 99 Idaho 45, 50, 577 P.2d 24, 29 (1978). We have interpreted this to mean that whether and to what extent discovery should be allowed in habeas corpus actions should be determined on a case-by-case basis. *Merrifield*, 128 Idaho at 310, 912 P.2d at 678. We review an alleged discovery error in a habeas corpus action for an abuse of discretion. *Storm v. Spaulding*, 137 Idaho 145, 149, 44 P.3d 1200, 1204 (Ct. App. 2002); *Merrifield*, 128 Idaho at 311, 912 P.2d at 679 (quoting *Dean v. Barber*, 951 F.2d 1210, 1213 (11th Cir. 1992)).

The denial of Petitioner's request to conduct discovery was appropriate, for his explanation for this request discloses that he wished only to conduct an unjustified "fishing expedition." That is, he merely hoped he would uncover some evidence to support his entirely unsubstantiated and conjectural accusation that the Respondents' actions were undertaken for an improper purpose. Petitioner asserts that a prisoner is entitled to file a habeas action alleging

10

claims unsubstantiated by any facts known to the Petitioner and thereafter conduct costly discovery to see if any possible basis for the claim exists. That is precisely the type of discovery abuse that trial courts may prevent. Therefore, although it may have been procedural error for the district court to grant summary judgment without first ruling on Petitioner's request for discovery, we hold the error was harmless because Petitioner was not entitled to discovery. *See Wohrle v. Kootenai County*, 147 Idaho 267, 272, 207 P.3d 998, 1003 (2009) (holding that an error is prejudicial only if it could have affected or did affect the outcome of a proceeding); *Crown Point Dev., Inc. v. City of Sun Valley*, 144 Idaho 72, 77, 156 P.3d 573, 578 (2007) (same); *In re Estate of Keeven*, 126 Idaho 290, 296, 882 P.2d 457, 463 (Ct. App. 1994) ("This Court will not grant relief for what is, at most, harmless error.").

## D.     Declaratory Judgment on Retaliation and Equal Protection Claims

Lastly, Petitioner argues that the district court erred in determining the only relief he would be entitled to if he prevails is a new parole hearing, which he already received. Because Carlin and Vehling are not Commission members, Petitioner argues, "they are not shielded under I.C. 20-223 from liability." Petitioner reasons that he might have been able to prove claims against Carlin and Vehling for a declaratory judgment, which he deems necessary or instrumental to bringing an independent civil rights action against them for damages.

Petitioner's argument is without merit. As stated above, the district court was correct in dismissing the petition because Petitioner failed to allege facts to support his conclusory claims. Therefore, regardless of the form of relief sought, his unsupported claims were properly dismissed.

## III.

## CONCLUSION

The district court's order dismissing Petitioner's habeas corpus claims is affirmed.

Chief Judge GRATTON and Judge MELANSON **CONCUR.**

11