919 P.2d 355

Alex LOPEZ, Petitioner–Appellant,

v.

STATE of Idaho, Respondent.

No. 22154.

Court of Appeals of Idaho.

May 16, 1996.

Alex Lopez, Boise, pro se.

Alan G. Lance, Attorney General; Timothy R. McNeese, Deputy Attorney General, Boise, for respondent.

LANSING, Judge.

This is an appeal from a district court's appellate decision upholding a magistrate's order that denied a petition for a writ of habeas corpus. The pro se petition was filed by Alex Lopez, an inmate at the Idaho State Correctional Institution (ISCI).[1] Lopez alleges that he was denied due process in connection with a prison disciplinary proceeding at which he was found guilty of misconduct. For the reasons explained below, we affirm the decision of the magistrate.

### FACTS AND PROCEDURAL BACKGROUND

Lopez received a disciplinary offense report charging that he had disobeyed orders to report for work at the prison dining facility on a day that otherwise was one of Lopez's days off. Following a hearing, Lopez was found guilty of the charged misconduct, and a penalty of thirty days' disciplinary segregation was imposed.

Because Lopez's first language is Spanish, prior to the hearing he submitted a written request for a staff representative to serve as an interpreter and to "investigate statements made by staff." A bilingual staff member, Pete Rodriguez, was assigned as Lopez's staff representative. Lopez complains that although Rodriguez did act as an interpreter during the disciplinary hearing, he did not interview any witnesses in advance of the hearing and made no argument that the penalty imposed at the conclusion of the hearing was too harsh.[2]

Lopez thereafter filed a petition for habeas corpus relief, alleging that he was deprived of due process in connection with the hearing. Lopez sought release from disciplinary segregation and expungement of the disciplinary offense report from his record. The State moved for summary judgment, and the magistrate granted the State's motion. On interim appeal, the district court affirmed the magistrate's decision.

### ANALYSIS

When reviewing a decision of a district court that has conducted an appellate review of a magistrate's ruling, we examine the record of the proceedings before the magistrate independently, but with due regard for the decision of the district court. *Craig v. State*, 123 Idaho 121, 123, 844 P.2d 1371, 1373 (Ct.App.1992). A petition for a writ of habeas corpus is a pleading analogous to a complaint, *Freeman v. State Dept. of Corrections*, 115 Idaho 78, 79, 764 P.2d 445, 446 (Ct.App.1988), and habeas corpus proceedings are subject to the Idaho Rules of Civil Procedure. *Jacobsen v. State*, 99 Idaho 45, 50, 577 P.2d 24, 29 (1978); *Sivak v. Ada County*, 118 Idaho 193, 196, 795 P.2d 898, 901 (Ct.App.1990). Therefore on appeal from a summary judgment in such an action, we adhere to the standard of review applicable to summary judgments generally. We examine the record to determine whether there is a genuine issue as to any material fact and whether the moving party was entitled to

---

1. In the proceedings in the courts below and on this appeal Lopez has been assisted by an inmate law clerk.

2. Lopez's habeas corpus petition also complains that Rodriguez did not advise Lopez that he had a right to appeal the decision of the disciplinary hearing officer. However, the record before us reveals that Lopez did, in fact, file a timely appeal, which was denied. Since Lopez did not lose the opportunity to appeal, we need not address this claimed deficiency in the performance of his staff representative.

judgment as a matter of law. I.R.C.P. 56(c); *Mitchell v. Siqueiros,* 99 Idaho 396, 398, 582 P.2d 1074, 1076 (1978).

■■■ When an inmate possesses a recognized liberty interest that may be infringed by state administrative proceedings, due process standards must be observed. *See Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Balla v. Murphy,* 116 Idaho 257, 775 P.2d 149 (Ct.App.1989). Under decisional law existing when this case was before the magistrate, a liberty interest implicating a right to due process for state prisoners could arise from two sources—the Due Process Clause of the Fourteenth Amendment and state laws or regulations. *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). The United States Supreme Court has held that the Due Process Clause does not create a liberty interest in freedom from state action taken within the scope of an inmate's sentence. *Id.* at 466–68, 103 S.Ct. at 868–70. Consequently, the Due Process Clause does not confer upon an inmate a liberty interest in remaining in the general inmate population rather than being confined in administrative segregation. *Id.* at 468. However, *Hewitt* established that state laws and regulations could be the source of a liberty interest if the state enactment "used language of an unmistakably mandatory character" requiring that certain procedures be followed and provided that a liberty infringement would not occur "absent specified substantive predicates." *Hewitt,* 459 U.S. at 471–72, 103 S.Ct. at 871–72.

It is this state law source of liberty interests upon which Lopez predicates his claim. He asserts that a protected liberty interest arises from a section of the Idaho Department of Correction Policy and Procedure Manual which provides that a staff representative shall always be appointed for an inmate who is subject to disciplinary proceedings where, in the opinion of the disciplinary hearing officer, the inmate would suffer from an inability to gather evidence, or an interpreter is required.[3] He claims that this regulation gave him a due process right to assistance of a staff representative who would act as an advocate and an investigator, not merely as an interpreter.

■■ During the pendency of this appeal, however, the United States Supreme Court adopted a new approach to determining whether state law creates a protected liberty interest for inmates. In *Sandin v. Conner,* —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Court shifted the inquiry away from the language used in state regulations and toward the nature of the deprivation involved. The Court criticized and abandoned the *Hewitt* approach, stating:

> By shifting the focus of the liberty interest inquiry to one based on the language of a particular regulation, and not the nature of the deprivation, the Court [in *Hewitt* ] encouraged prisoners to comb regulations in search of mandatory language on which to base entitlements to various state-conferred privileges.
>
> . . . .
>
> *Hewitt* has produced at least two undesirable effects. First, it creates disincentives for States to codify prison management procedures in the interest of uniform treatment. . . . States may avoid creation of "liberty interests" by having scarcely

---

**3.** Section 318–C of the Procedure Manual provides in relevant part:

> A staff representative shall always be appointed where, in the opinion of the disciplinary hearing officer, there is an inability for the charged inmate to gather evidence, where the inmate is incompetent to make a defense, where an interpreter is required, or where confidential information is being considered.
> . . . .
> It shall be the responsibility of the representative to assist the inmate in preparing and presenting his defense.

> a. The representative shall consult with the inmate to insure that the inmate understands the charge against him and the potential consequences.
> b. The representative shall be present throughout the course of the disciplinary hearing ... [and] shall make sure that a fair presentation of the inmate's evidence is made.
> c. The representative will collect all written witness statements the inmate wishes to present at the hearing for consideration.
> d. The representative will assist with the preparation of the first appeal if any.

any regulations, or by conferring standardless discretion on correctional personnel.

Second, the *Hewitt* approach has led to the involvement of federal courts in the day-to-day management of prisons, often squandering judicial resources with little off-setting benefit to anyone.

*Id.,* —— U.S. at ——, 115 S.Ct. at 2299. The Court therefore replaced the *Hewitt* analysis with one which focuses upon the hardship for the inmate resulting from the prison's action as that hardship compares to the normal conditions of prison life. The Court stated:

> Following *Wolff* [*v. McDonnell, supra* ], we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes *atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.*

*Sandin,* —— U.S. at ——, 115 S.Ct. at 2300 (emphasis added) (citations omitted).

Consequently, in considering an inmate's claim of a due process right in disciplinary proceedings based upon state law, courts must now examine whether the punishment imposed upon the inmate fell within the ordinary conditions experienced by those serving a prison sentence or whether the punishment represents a dramatic departure from the circumstances normally attending imprisonment. *See Sandin,* —— U.S. at ——, 115 S.Ct. at 2301; *Williams v. Ramos,* 71 F.3d 1246, 1249–50 (7th Cir.1995); *Whitford v. Boglino,* 63 F.3d 527, 533 (7th Cir.1995).

In *Sandin,* the disciplinary action at issue was placement of the inmate in disciplinary segregation. From the record, the Supreme Court determined that, at the time of the inmate's punishment, disciplinary segregation involved essentially the same conditions imposed upon inmates in administrative segregation and protective custody, and therefore the disciplinary detention in segregated confinement "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Sandin,* —— U.S. at ——, 115 S.Ct. at 2301.

*Sandin* must be applied retroactively to the case before us. *See Mujahid v. Meyer,* 59 F.3d 931, 932 n. 2 (9th Cir.1995). In the present action, because the trial court proceedings occurred before the *Sandin* decision was issued, no evidence was presented, and no findings were made, comparing the conditions of confinement in disciplinary detention at ISCI with the ordinary conditions of the general inmate population. Therefore, we cannot ascertain whether Lopez's disciplinary segregation imposed an "atypical and significant hardship" on him.

■ A remand for further evidence and fact-finding is unnecessary, however, if, assuming the existence of a liberty interest and a consequent right to due process, the magistrate correctly concluded that Lopez's right to due process was not infringed. We therefore examine Lopez's argument that he was entitled to a staff representative who would not merely act as an interpreter but would also conduct witness interviews and present to the hearing officer argument for a lesser punishment.

Lopez's claim is based upon language in *Wolff v. McDonnell,* 418 U.S. at 570, 94 S.Ct. at 2981–82, where the United States Supreme Court stated:

> [W]here an illiterate inmate is involved . . . or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by staff.

*See also Balla v. Murphy,* 116 Idaho at 260, 775 P.2d at 152. We agree with Lopez's assertion that the existence of a language barrier is a circumstance in which due process standards may require appointment of a representative to assist the inmate.

In our view, however, the scope of the service which must be provided by the repre-

sentative in order to comply with due process standards will depend upon the nature of the inmate's disability that necessitates the assistance. That is, help must be provided only to perform those tasks that the inmate is unable to perform for himself. The assistance that must be afforded an inmate who is unable to read English is not necessarily coextensive with the assistance required for one who faces a different impediment such as a mental inability to grasp the issues or isolation in segregated confinement prior to the disciplinary hearing.

In Lopez's habeas corpus petition, the only allegation of a limitation upon his ability to present his own defense is the assertion that he is "a Mexican National with a very limited education and understanding of the various rules, especially brief memos that are not written in the spanish language...." This allegation is consistent with uncontroverted evidence in the record indicating that Lopez's only serious limitation was his inability to read English. In support of its motion for summary judgment, the State submitted affidavits of the officer who presided over Lopez's disciplinary hearing and the officer who was appointed to be Lopez's staff representative. These affidavits presented evidence that Lopez speaks English and understands spoken English and that he converses with non-Spanish speaking officers in English. In his affidavit opposing the State's summary judgment motion, Lopez presented nothing refuting this evidence that he is able to converse in English, and he has never contended that he was unable to understand the issues presented in the disciplinary proceeding. Therefore, according to uncontroverted evidence, Lopez's only impediment creating a need for assistance was an inability to read English.

That being the case, due process standards were satisfied by appointment of an interpreter who could interpret for Lopez documents related to the disciplinary proceeding that were written in English. Lopez's allegations, assuming that they are true, do not demonstrate that he was in need of a staff representative to interview witnesses prior to the hearing, since Lopez was able to converse in English sufficiently to conduct such interviews himself. Lopez also could have presented argument on his own behalf at the hearing. Because an interpreter was provided for him, he could even have presented the argument in Spanish.

■ Finally, we note that even if Lopez needed a representative who would interview witnesses, he has neither alleged nor presented evidence of any prejudice from this asserted shortcoming in the staff representative's service. "[A] habeas corpus petition must demonstrate not only that some statute, procedure or action was unconstitutional, but also that the petitioner was adversely affected—or prejudiced—by the constitutional violation." *Coleman v. State,* 114 Idaho 901, 902, 762 P.2d 814, 815 (1988); *Waggoner v. State,* 121 Idaho 758, 760, 828 P.2d 321, 323 (Ct.App.1991). Lopez's petition and affidavit identify no information helpful to his defense that would have been revealed by witness interviews.

For the foregoing reasons, the decision of the district court, affirming the magistrate's order granting summary judgment to the State on Lopez's petition for habeas corpus relief, is affirmed.

WALTERS, C.J., and PERRY, J., concur.