67 P.3d 98

**Gregory J. NELSON, Petitioner–Appellant,**

**v.**

**John HAYDEN, Chairman, Idaho Board of Correction; David Munroe and Janet Jenkins, Members, Idaho Board of Correction; James C. Spalding, Director, Idaho Department of Correction; Joseph S. Klauser, Warden, Idaho State Correctional Institution; A. Steve Shayne, Lieutenant, Idaho State Correctional Institution; Jay A. Green, Sergeant and Disciplinary Hearing Officer, Idaho**

State Correctional Institution; J. Morrison, Correctional Officer, Idaho State Correctional Institution; Dave Paskett, Warden, Idaho Maximum Security Institution; in their official capacities, Respondents.

No. 28031.

Court of Appeals of Idaho.

Feb. 25, 2003.

Review Denied April 23, 2003.

Gregory J. Nelson, Boise, pro se, appellant.

Hon. Lawrence G. Wasden, Attorney General; Timothy R. McNeese, Deputy Attorney General, Boise, for respondent.

LANSING, Chief Judge.

In this appeal, Gregory J. Nelson challenges the magistrate's order dismissing his petition for a writ of habeas corpus. He contends that he is entitled to relief from prison disciplinary measures because the prison rule that he was charged with violating did not provide fair warning that his conduct was prohibited. We affirm the dismissal of his petition.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Nelson was a prisoner at the Idaho State Correctional Institution (ISCI) and was assigned to work in Correctional Industries (CI). As a CI employee, Nelson was to eat breakfast at 6:00 a.m. with other CI workers. On the day of the events giving rise to this case, Nelson ate breakfast with the CI group as usual. After breakfast, Nelson did not proceed to work because he had an appointment in the medical building at 7:00 a.m. While he was in the medical building, Nelson heard over the intercom that his residential unit was released to go to the dining hall for breakfast. Upon hearing this, Nelson elected not to proceed directly to work at CI after his medical appointment. Instead, he returned to the dining hall, where he ate a second breakfast with his residential unit. Several correctional officers noted that Nelson had already eaten breakfast with his CI work group. As a result of his actions, Nelson was issued a disciplinary offense report (DOR) which charged that he was "in an unauthorized area being in [the dining hall] with his unit, because he eats with ... the other workers." Nelson denied guilt, asserting that he was unaware of any rule prohibiting prisoners from partaking of the same meal twice. He was advised that the rule he had violated was one that forbad "failure to comply with designated or authorized boundaries and schedules of a living unit, work assignment or security facility." Nelson was found guilty and received disciplinary sanctions of five days in detention and forty hours of extra duty, suspended for ninety days. As a result of these sanctions, Nelson was reclassified from medium to close custody, was transferred to another facility, and lost his job at CI.

Nelson filed a pro se petition for a writ of habeas corpus, alleging that he was deprived of due process when he was disciplined for violation of an "unwritten rule [of] which petitioner was given no fair notice." The State moved for dismissal of Nelson's petition, arguing that under the standard set forth in *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), there was no violation of due process because Nelson had no cognizable liberty interest that was impaired by the prison disciplinary proceedings. Following the reasoning presented by the State, the magistrate dismissed Nelson's petition. Nelson appealed the magistrate's decision to the district court, which affirmed.

## II.

### ANALYSIS

#### A. Standard of Review

When reviewing a decision of the district court, made in its appellate capacity, we independently examine the record of the magistrate court, with due regard for the district court's appellate decision. *State v. Bowman*, 124 Idaho 936, 939, 866 P.2d 193, 196 (Ct.App.1993). The magistrate's order of dismissal in this case was entered upon the pleadings, affidavits and documents submitted by the parties after the State moved for dismissal under Rule 12(b)(6) of the Idaho Rules of Civil Procedure. When a court considers matters outside of the pleadings in resolving a motion to dismiss, the motion is

treated as a motion for summary judgment and is reviewed under the summary judgment standard expressed in I.R.C.P. 56(c). I.R.C.P. 12(b); *Storm v. Spaulding,* 137 Idaho 145, 147, 44 P.3d 1200, 1202 (Ct.App.2002); *Merrifield v. Arave,* 128 Idaho 306, 307, 912 P.2d 674, 675 (Ct.App.1996). Summary judgment may be entered only if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). On appeal from a summary judgment we exercise free review in determining whether a material factual issue exists and, if not, whether application of law to the undisputed facts mandates judgment for the moving party. *Martin v. Spalding,* 133 Idaho 469, 471, 988 P.2d 695, 697 (Ct.App.1998). The facts and all reasonable inferences from the evidence are to be liberally construed in the favor of the non-movant. *Duvalt v. Sonnen,* 137 Idaho 548, 552, 50 P.3d 1043, 1047 (Ct. App.2002); *Martin,* 133 Idaho at 471, 988 P.2d at 697.

## B. Due Process

According to Nelson, the record demonstrates that his right to due process was violated when he was punished for violating a rule prohibiting prisoners from being in unauthorized areas. He argues that this rule is vague in that it did not give him fair notice that going through the serving line twice for the same meal was prohibited and would result in disciplinary action.

 The claim thus framed is one for violation of the right to substantive due process. The Due Process Clause of the Fourteenth Amendment has been interpreted by the United States Supreme Court to provide two distinct guarantees: substantive due process and procedural due process. *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100, 113 (1990); *DeKalb Stone, Inc. v. County of DeKalb, Ga.,* 106 F.3d 956, 959 (11th Cir.1997). Substantive due process includes, inter alia, a general protection against state action that is arbitrary and capricious. *Zinermon,* 494 U.S. at 125, 110 S.Ct. at 983, 108 L.Ed.2d at 113.

Substantive due process includes the void-for-vagueness doctrine, which requires that a penal statute "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903, 908 (1983). *See also Wyckoff v. Board of County Commissioners of Ada County,* 101 Idaho 12, 15, 607 P.2d 1066, 1069 (1980); *Pence v. Idaho State Horse Racing Commission,* 109 Idaho 112, 115, 705 P.2d 1067, 1070 (Ct.App.1985). This vagueness doctrine is based upon the precept that "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Connally v. General Const. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926). Although all aspects of the vagueness doctrine concerning criminal statutes may not be applicable to prison rules, it is established that, even with regard to prison regulations, due process requires fair notice that the conduct is prohibited before a sanction can be imposed. *Newell v. Sauser,* 79 F.3d 115, 117–18 (9th Cir.1996); *Rios v. Lane,* 812 F.2d 1032, 1038–39 (7th Cir.1987); *Adams v. Gunnell,* 729 F.2d 362, 368–70 (5th Cir.1984).

Before addressing the merits of Nelson's vagueness claim, we must acknowledge the State's contention that, under the United States Supreme Court's decision in *Sandin,* Nelson was not entitled to due process before being punished for an infraction of the prison rules. At issue in *Sandin* was an inmate's assertion that he had been deprived of procedural due process because he was not allowed to call witnesses in a prison disciplinary hearing. The Court held that, for prisoners, any liberty interest that is protected by the Due Process Clause is generally limited to an interest in freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300, 132 L.Ed.2d at 429–30. The Court concluded that the punishment of which the inmate

complained—disciplinary segregation—was not an atypical and significant hardship, and therefore the inmate had not shown the deprivation of a liberty interest that was entitled to protection through procedural safeguards in the disciplinary proceedings. *Id.* at 485–86, 115 S.Ct. at 2301, 132 L.Ed.2d at 430–31. *See also Schevers v. State,* 129 Idaho 573, 930 P.2d 603 (1996). In the present case, the State contends that Nelson's punishment, like that in *Sandin,* was not a dramatic departure from the ordinary conditions of prison life and presented no atypical and significant hardship from which there could be found a liberty interest protected by the constitutional guarantee of due process.

We note, however, that *Sandin* may be distinguished from the case before us because the due process claim in *Sandin* was for a denial of *procedural* due process in the hearing that was conducted for the determination of the inmate's guilt. Here, Nelson does not assert any procedural flaws in the adjudicatory process. Rather, as noted above, he complains of deprivation of *substantive* due process. At least one appellate court has said that the *Sandin* analysis does not apply to a prisoner's substantive due process rights, *Todd v. Comm'r of Corr.,* 54 Mass.App.Ct. 31, 763 N.E.2d 1112, 1115 n. 6 (2002), and several others have addressed prisoners' substantive due process claims without reference to *Sandin. See Murphy v. Shaw,* 195 F.3d 1121, 1128–29 (9th Cir.1999), *rev'd on other grounds,* 532 U.S. 223, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001); *Newell,* 79 F.3d at 117–18; *Carter v. State,* 537 N.W.2d 715, 717 (Iowa 1995); *People v. Medina,* 262 A.D.2d 708, 693 N.Y.S.2d 632, 633 (N.Y.App.Div.1999); *Di Rose v. New York State Dep't of Corr.,* 228 A.D.2d 868, 644 N.Y.S.2d 577, 578 (N.Y.App.Div.1996); *In re the Personal Restraint Petition of S.J. Krier,* 108 Wash.App. 31, 29 P.3d 720, 724 (2001).

■ The present appeal does not require that we resolve this question as to whether the *Sandin* definition of liberty interest is a limitation upon inmates' substantive due process claims, for even if *Sandin* does not govern here, we conclude that Nelson's petition was unmeritorious. A regulation provides adequate warning and is sufficiently explicit if reasonable persons can understand what conduct is prohibited. *Kolender,* 461 U.S. at 357, 103 S.Ct. at 1858, 75 L.Ed.2d at 908; *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222, 227 (1972); *State v. Richards,* 127 Idaho 31, 37, 896 P.2d 357, 363 (Ct.App.1995). Nelson was charged with violating a written prison rule that prohibited "failure to comply with designated or authorized boundaries and schedules of a living unit, work assignment or security facility." Nelson does not contend that he lacked notice of this rule; he argues only that it is insufficiently specific to notify him that going to breakfast twice was prohibited. We disagree. Undisputed evidence presented to the magistrate shows that at the time Nelson ate his second breakfast, he had been released from his work detail at CI only so he could go to the medical building for blood tests. When Nelson heard his residential unit being called to the dining hall, he decided to join it rather than returning to work at CI after his business at the medical building was concluded. Nelson argues that because his residential unit was authorized to go to breakfast, the rule against being in an unauthorized area was not violated by his conduct. Nelson's reasoning misses the mark, however, because it presupposes that Nelson was allowed to be with his residential unit rather than with his work unit. The rule under which Nelson was charged requires not only compliance with designated boundaries but also compliance with schedules. At the time of his offense, Nelson was scheduled to be at his work station except for an authorized departure to the medical building. The rule in question is sufficient to put a reasonable person in this circumstance on notice that going from the medical building to take a second meal at the dining hall, rather than returning to work at CI, was prohibited.

The prison rule that Nelson was charged with violating is sufficient to provide fair notice that his conduct was prohibited. Therefore, Nelson's evidence demonstrated no substantive due process violation, and the magistrate court properly dismissed his peti-

tion for a writ of habeas corpus. The order of dismissal is affirmed.

Judge PERRY and Judge GUTIERREZ concur.