## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 40019

| | | |
|---|---|---|
| JASON E. WAIDELICH, | ) | 2013 Unpublished Opinion No. 711 |
| | ) | |
| Petitioner-Appellant, | ) | Filed: October 16, 2013 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| TIM WENGLER, Warden, Idaho | ) | THIS IS AN UNPUBLISHED |
| Correctional Center; MELODY | ) | OPINION AND SHALL NOT |
| ARMFIELD, Disciplinary Hearing Officer; | ) | BE CITED AS AUTHORITY |
| SHANNON CLUNEY, Deputy Warden | ) | |
| Virtual Prisons, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Daniel C. Hurlbutt, District Judge.

Judgment denying petition for writ of habeas corpus, <u>affirmed</u>.

Jason E. Waidelich, Boise, pro se appellant.

James R. Stoll of Naylor & Hales, P.C., Boise, for respondents Tim Wengler and Melody Armfield.

Hon. Lawrence G. Wasden, Attorney General; Colleen D. Zahn, Deputy Attorney General, Boise, for respondent Shannon Cluney.

_____

GUTIERREZ, Chief Judge

Jason E. Waidelich appeals from the district court's judgment denying Waidelich's petition for a writ of habeas corpus in favor of respondents Timothy Wengler, Melody Armfield, and Shannon Cluney (collectively, the respondents). For the reasons that follow, we affirm.

### I.

### FACTS AND PROCEDURE

At relevant times, Waidelich was a prisoner under the jurisdiction of the Idaho Department of Correction and housed at the Idaho Correctional Center beginning in 2010. After entering the Correctional Center, Waidelich joined the therapeutic community. Waidelich was

1

informed that if he successfully graduated from the therapeutic community, a tentative parole date would be established for mid-January 2011. However, after Waidelich was found to have violated a prison rule by providing an adulterated urine sample, the tentative parole date was cancelled, and Waidelich filed a petition for a writ of habeas corpus.

The record indicates that upon entering the Correctional Center, Waidelich signed off on having received the Inmate Handbook and agreeing to read and abide by the rules listed in the Inmate Handbook. One of the rules in the handbook provides that members of the therapeutic community are subject to random drug testing. Another rule in the handbook lists a series of disciplinary offenses. One offense is "Refusal to Participate in Drug Test in a Secure Facility," and it has the following description: "Refusing to provide or adulterating a urine sample or refusing to cooperate with any drug/alcohol testing procedure in a medium or close custody facility." Although not published in the Inmate Handbook, an Idaho Department of Correction policy addresses at least one indicator of an adulterated urine sample and provides that "a creatinine level less than 20 mg/dl is very unlikely in a normal hydrated individual with normal kidney function and would indicate some degree of dilution."

As a member of the therapeutic community, Waidelich was selected for a random drug test in December 2010. Waidelich provided a urine sample, and the urine sample was sent to an independent lab for testing. Days later, but before the drug test results were returned, Waidelich was informed that he had graduated from the therapeutic community and his parole was tentatively scheduled for mid-January 2011. At the end of December, the drug test results were returned and indicated that Waidelich had a creatinine level of 10.5 mg/dl, a level indicative of an adulterated urine sample according to the Department of Correction policy. Waidelich was served with a disciplinary offense report for providing an adulterated urine sample, and a hearing was held a few days later, but before his tentative parole date. At the hearing, Waidelich asserted he did not violate the rule and contended he had consumed large amounts of water because of his exercise routine within the therapeutic community. Hearing Officer Armfield determined that Waidelich violated the rule and imposed penalties. Waidelich asserts that during the hearing, Hearing Officer Armfield stated that if a second urine analysis provided by Waidelich was clean, she would dismiss the disciplinary offense.

Waidelich appealed the hearing officer's determination and penalties to the Correctional Center Warden, Wengler. Warden Wengler affirmed, and Waidelich then appealed to the

2

Department of Correction Deputy Warden of Virtual Prisons, Cluney. Deputy Warden Cluney also affirmed. In the time between the disciplinary hearing and Deputy Warden Cluney's affirmance, the Idaho Parole Commission informed Waidelich that his tentative parole date had been cancelled due to the disciplinary finding, which had been reported to the Parole Commission. Waidelich asserts his next parole hearing was pushed back two years. Waidelich also alleges that days after his tentative parole date, he learned his second urine sample had come back clean, but Hearing Officer Armfield refused to dismiss the disciplinary offense.

After his tentative parole date was cancelled, Waidelich filed a pro se petition for a writ of habeas corpus in the district court. In the petition, Waidelich argued his due process and equal protection rights were violated because: (1) he lacked notice of the rule he was found to have violated; (2) he was treated differently than another similarly situated prisoner; (3) he was subjected to sanctions as a result of the rule violation; and (4) he lost his parole date as a result of the rule violation. Waidelich also moved the court to appoint counsel for him. In an interim order, the district court, on its own accord, dismissed Waidelich's claims that Waidelich's due process and equal protection rights were violated by the imposition of sanctions for the rule violation and the resulting loss of his parole date. However, the district court ordered the respondents to provide additional briefing regarding notice of the rule and the alleged disparity in treatment. The district court, also in the interim order, declined to appoint counsel for Waidelich.

Following the interim order, the respondents moved for summary judgment. Warden Wengler and Hearing Officer Armfield argued that Waidelich had sufficient notice of the rule, that the Idaho Parole Commission could consider a myriad of considerations in deciding to cancel a tentative parole date, and that Waidelich failed to prove the second inmate was similarly situated or treated differently than Waidelich. Deputy Warden Cluney argued that there was no constitutional right to parole, that Waidelich had sufficient notice of the urine-sample rule, and that Waidelich failed to show he was a member of a protected, equal-protection class. Waidelich opposed the motion and raised the issue of the constitutionality of Idaho Code § 19-4205, although he did not amend his petition to include this issue. The respondents replied in support of their position, and following a hearing, the district court granted the respondents' motion for summary judgment. The district court then entered a judgment denying the petition for a writ of habeas corpus. Waidelich appeals.

## II.

## STANDARD OF REVIEW

The writ of habeas corpus is a constitutionally mandated mechanism to effect the discharge of an individual from unlawful confinement. *See* IDAHO CONST. art. I, § 5; I.C. §§ 19-4201 to 19-4226; *Mahaffey v. State*, 87 Idaho 228, 231, 392 P.2d 279, 280 (1964); *Gawron v. Roberts*, 113 Idaho 330, 333, 743 P.2d 983, 986 (Ct. App. 1987). The essence of habeas corpus is an attack upon the legality of a person's detention for the purpose of securing release where custody is illegal and is an avenue by which relief can be sought where detention of an individual is in violation of a fundamental right. *In re Robinson*, 107 Idaho 1055, 1057, 695 P.2d 440, 442 (Ct. App. 1985). An in-state prisoner may file a petition for a writ of habeas corpus to request that a court inquire into state or federal constitutional questions concerning conditions of confinement, the revocation of parole, miscalculation of a sentence, loss of good time credits, or detainers lodged against the prisoner. I.C. § 19-4203(2)(a)-(e). Habeas corpus may not be used as a substitute for, or in addition to, a direct appeal of a criminal conviction or proceeding under Idaho Criminal Rule 35 or the Uniform Post-Conviction Procedures Act. I.C. § 19-4203(4).

The decision to issue a writ of habeas corpus is a matter within the discretion of the court. *Johnson v. State*, 85 Idaho 123, 127, 376 P.2d 704, 706 (1962); *Brennan v. State*, 122 Idaho 911, 914, 841 P.2d 441, 444 (Ct. App. 1992). When we review an exercise of discretion in a habeas corpus proceeding, we conduct a three-tiered inquiry to determine whether the lower court rightly perceived the issue as one of discretion, acted within the boundaries of such discretion, and reached its decision by an exercise of reason. *Brennan*, 122 Idaho at 914, 841 P.2d at 444; *Sivak v. Ada Cnty.*, 115 Idaho 762, 763, 769 P.2d 1134, 1135 (Ct. App. 1989). If a petitioner is not entitled to relief on a petition for a writ of habeas corpus, the decision by the petitioned court to dismiss the petition without an evidentiary hearing will be upheld. *Brennan*, 122 Idaho at 917, 841 P.2d at 447. When a court considers matters outside the pleadings on an Idaho Rule of Civil Procedure 12(b)(6) motion to dismiss, such motion must be treated as a motion for summary judgment. *Hellickson v. Jenkins*, 118 Idaho 273, 276, 796 P.2d 150, 153 (Ct. App. 1990).

Habeas corpus proceedings are civil in nature, and generally, the rules of civil procedure apply. I.C. § 19-4208; *Quinlan v. Idaho Comm'n for Pardons & Parole*, 138 Idaho 726, 729, 69 P.3d 146, 149 (2003); *Lopez v. State*, 128 Idaho 826, 827, 919 P.2d 355, 356 (Ct. App. 1996). Therefore, on appeal from a summary judgment in such an action, we adhere to the standard of

4

review applicable to summary judgments generally. *Lopez*, 128 Idaho at 827, 919 P.2d at 356. We first note that summary judgment under Idaho Rule of Civil Procedure 56(c) is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. On appeal, we exercise free review in determining whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Edwards v. Conchemco, Inc.*, 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct. App. 1986). When assessing a motion for summary judgment, all controverted facts are to be liberally construed in favor of the nonmoving party. Furthermore, the trial court must draw all reasonable inferences in favor of the party resisting the motion. *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 517, 808 P.2d 851, 854 (1991); *Sanders v. Kuna Joint Sch. Dist.*, 125 Idaho 872, 874, 876 P.2d 154, 156 (Ct. App. 1994).

The party moving for summary judgment initially carries the burden to establish that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. *Eliopulos v. Knox*, 123 Idaho 400, 404, 848 P.2d 984, 988 (Ct. App. 1992). The burden may be met by establishing the absence of evidence on an element that the nonmoving party will be required to prove at trial. *Dunnick v. Elder*, 126 Idaho 308, 311, 882 P.2d 475, 478 (Ct. App. 1994). Such an absence of evidence may be established either by an affirmative showing with the moving party's own evidence or by a review of all the nonmoving party's evidence and the contention that such proof of an element is lacking. *Heath v. Honker's Mini-Mart, Inc.*, 134 Idaho 711, 712, 8 P.3d 1254, 1255 (Ct. App. 2000). Once such an absence of evidence has been established, the burden then shifts to the party opposing the motion to show, via further depositions, discovery responses or affidavits, that there is indeed a genuine issue for trial or to offer a valid justification for the failure to do so under Idaho Rule of Civil Procedure 56(f). *Sanders*, 125 Idaho at 874, 876 P.2d at 156.

The United States Supreme Court, in interpreting Federal Rule of Civil Procedure 56(c), which is identical in all relevant aspects to Idaho Rule of Civil Procedure 56(c), stated:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The

moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof . . . .

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citations omitted). The language and reasoning of *Celotex* has been adopted in Idaho. *Dunnick*, 126 Idaho at 312, 882 P.2d at 479.

## III.

## ANALYSIS

On appeal, Waidelich contends: (1) Idaho Code §§ 19-4205 and 19-4209 are facially unconstitutional; (2) the district court erred by granting summary judgment because Waidelich was deprived of due process of the law when he was found to have violated the urine-sample rule; (3) the district court erred by granting summary judgment because Waidelich was denied equal protection of the law when he was found to have violated the urine-sample rule; and (4) the district court erred by declining to appoint counsel for Waidelich. We address these in turn.

### A. Constitutionality of Idaho Code §§ 19-4205 and 19-4209

Waidelich, for the first time on appeal, argues Idaho Code §§ 19-4205 and 19-4209 are unconstitutional on their face. Waidelich's petition before the district court did not raise this issue. Generally, issues not raised below may not be considered for the first time on appeal. *Sanchez v. Arave*, 120 Idaho 321, 322, 815 P.2d 1061, 1062 (1991). Thus, we decline to consider this issue.

### B. Due Process of Law

Waidelich next argues the district court erred by granting summary judgment on Waidelich's claim that his due process rights were violated. Waidelich contends he was deprived of due process of the law because he lacked sufficient notice of the rule he was disciplined under and because the rule violation led to the cancellation of his upcoming parole date. The Due Process Clause of the Fourteenth Amendment has been interpreted by the United States Supreme Court to provide two distinct guarantees: substantive due process and procedural due process. *Nelson v. Hayden*, 138 Idaho 619, 622, 67 P.3d 98, 101 (Ct. App. 2003). The Idaho Constitution, in article I, section 13, provides a similar protection, and we analyze the rights afforded under each concurrently. *See Idaho Dairymen's Ass'n v. Gooding Cnty.*, 148 Idaho 653, 661, 227 P.3d 907, 915 (2010); s*ee also Schevers v. State*, 129 Idaho 573, 577-78, 930 P.2d 603, 607-08 (1996) (applying the standard used under the Fourteenth Amendment to

6

article I, section 13 of the Idaho Constitution for determining whether a prison disciplinary action infringes a liberty interest). The notice argument is properly characterized as a challenge to substantive due process, *Nelson*, 138 Idaho at 622, 67 P.3d at 101, and the loss of a tentative parole date is properly characterized as a challenge to procedural due process, *cf. State v. Scraggins*, 153 Idaho 867, 870, 292 P.3d 258, 261 (2012) (citing *Morrissey v. Brewer*, 408 U.S. 471, 481-85 (1972)) (revocation of parole invokes procedural due process protections). Below, the district court granted summary judgment because it determined Waidelich had sufficient notice of the rule and, ergo, the respondents were entitled to judgment as a matter of law.

### 1. Substantive due process

Waidelich makes two arguments of substantive due process, one of notice and one of specificity. Waidelich initially asserts he lacked proper notice of the rule he was found to have violated. Waidelich makes the second argument in the form of a question: "How many glasses of water may I drink over what period of time before I am guilty of violating this rule?"

Substantive due process generally protects a person from state action that is arbitrary and capricious. *Nelson*, 138 Idaho at 622, 67 P.3d at 101. Under the void-for-vagueness doctrine, a penal statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Id.* (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)). As this Court stated in *Nelson*, "Although all aspects of the vagueness doctrine concerning criminal statutes may not be applicable to prison rules, it is established that, even with regard to prison regulations, due process requires fair notice that the conduct is prohibited before a sanction can be imposed." *Id.* (citing *Newell v. Sauser*, 79 F.3d 115, 117-18 (9th Cir. 1996); *Rios v. Lane*, 812 F.2d 1032, 1038-39 (7th Cir. 1987); *Adams v. Gunnell*, 729 F.2d 362, 368-70 (5th Cir. 1984)).

Waidelich argues that the policy used to establish his guilt is not available to the public or inmates, nor was it ever provided to him during the course of the proceedings. Deputy Warden Cluney responds that Waidelich was provided fair notice of the conduct that was prohibited, and that "[t]he concept of fair notice does not require that prison officials spell out every circumstance that could constitute an adulterated sample or refusing to cooperate." Similarly, Warden Wengler and Hearing Officer Armfield argue that the rules available to Waidelich provided Waidelich fair notice of the general conduct that was prohibited and that a person of

7

ordinary intelligence could foresee that submitting a watered-down urine sample violates the rule against providing an adulterated urine sample.

The first issue is whether Waidelich had sufficient notice that providing an adulterated urine sample was a violation of the rule contained in the Inmate Handbook. Here, the record before us indicates that Waidelich received a copy of the Inmate Handbook. Prior to the incident at issue, Waidelich signed a handbook receipt that required Waidelich to read the Inmate Handbook. A rule in the handbook provides that random drug testing may occur upon those prisoners in the therapeutic community, of which Waidelich was a part. In addition, the Inmate Handbook lists as a disciplinary offense: "Refusing to provide or adulterating a urine sample, or refusing to cooperate with any drug/alcohol testing procedure in a medium or close custody facility." What Waidelich was not made aware of prior to the drug test was how the Correctional Center determined if a sample had indicators of adulteration. It is enough in this case that Waidelich received a copy of the Inmate Handbook that enumerated the drug testing policy and the consequences of failing to provide or providing an adulterated urine sample. "A regulation provides adequate warning and is sufficiently explicit if reasonable persons can understand what conduct is prohibited." *Nelson*, 138 Idaho at 623, 67 P.3d at 102. We are persuaded that Waidelich was provided with fair notice that if a prisoner provided an adulterated urine sample, by whatever means, a violation would result.

Moreover, we agree with the respondents that fair notice does not require that every possible way of violating a rule be enumerated. In *Nelson*, the prisoner ate breakfast with prisoners in his work assignment before the work assignment released the prisoner to go to the medical building. After visiting the medical building, instead of returning to his scheduled work assignment, the prisoner then ate a second breakfast with prisoners of his residential unit. The prisoner was charged with violating a written prison rule that made the "failure to comply with designated or authorized boundaries and schedules of a living unit, work assignment or security facility" a violation. *Id*. at 621, 67 P.3d at 100. Although the prisoner did not argue he lacked notice of the rule, he did argue that the rule was "insufficiently specific to notify him" that the conduct of eating a second breakfast was prohibited. *Id.* at 623, 67 P.3d at 102. We held that the rule provided fair notice because it provided that the prisoner had to comply with designated schedules. *Id.* We concluded that the prisoner was in violation of his designated work schedule when he ate the second breakfast and, thus, was in violation of the rule. *Id.* Similarly in

8

Waidelich's case, the violation is defined with enough specificity, and that violation occurs when the prisoner fails to provide a sample or provides an adulterated sample. It is of no concern that the rule here does not enumerate possible violations of the rule, as much as the rule in *Nelson* was not required to enumerate that eating a second breakfast was a violation.

Thus, Waidelich was provided with the required fair notice of the rule that he was charged with violating. The rule itself provides adequate warning and is sufficiently explicit. Therefore, Waidelich has not shown a substantive due process violation. Waidelich has failed to raise a genuine issue of material fact, and the respondents are entitled to judgment as a matter of law.

## 2. Procedural due process

Waidelich also asserts the rule violation impacts his parole date. This amounts to an assertion of a violation of procedural due process, as guaranteed under both the Fourteenth Amendment and article I, section 13 of the Idaho Constitution. *Cf. Scraggins*, 153 Idaho at 870, 292 P.3d at 261 (citing *Morrissey*, 408 U.S. at 481-85) (revocation of parole invokes procedural due process protections). Generally, to determine whether an individual's due process rights under the Fourteenth Amendment have been violated, a court must engage in a two-step analysis. The court must first decide whether the individual's threatened interest is a liberty or property interest under the Fourteenth Amendment. *Schevers*, 129 Idaho at 575, 930 P.2d at 605; *Smith v. Meridian Joint Sch. Dist. No. 2*, 128 Idaho 714, 722, 918 P.2d 583, 591 (1996)). It is only after a liberty interest is found that the court needs to determine the extent of the procedural due process protections. *Schevers*, 129 Idaho at 575, 930 P.2d at 605.

In this case, Idaho case law answers the first step of the two-step analysis in the negative. Idaho case law recognizes no constitutionally protected liberty interest in receiving parole. *Hoots v. Craven*, 146 Idaho 271, 276, 192 P.3d 1095, 1100 (Ct. App. 2008); *see also Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979) (no constitutionally protected right of a convicted person to be released on parole before the expiration of a valid sentence). Idaho statutes governing parole only provide for the possibility of parole, *Izatt v. State*, 104 Idaho 597, 600, 661 P.2d 763, 766 (1983), and the Parole Commission has broad discretion in making its parole decisions, *Ybarra v. Dermitt*, 104 Idaho 150, 151, 657 P.2d 14, 15 (1983). As part of its decisionmaking, the Idaho Parole Commission considers a myriad of considerations. *Schevers*, 129 Idaho at 577, 930 P.2d at 607. "Any host of administrative or disciplinary

9

decisions made by prison authorities might somehow affect the timing of a prisoner's release, but such effects have never been held to confer a constitutionally protected liberty interest upon a prisoner . . . ." *Id.* (quoting *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995)). Because Waidelich has failed to establish a liberty interest in the tentative receipt of parole, he has not established a procedural due process violation. Waidelich failed to establish a genuine issue of material fact, and the respondents are entitled to judgment as a matter of law.

## C. Equal Protection

Waidelich next argues the district court erred by granting summary judgment because Waidelich was denied equal protection of the law, in violation of the Fourteenth Amendment and the Idaho Constitution. We analyze the alleged violations concurrently. *See, e.g.*, *Northcutt v. Sun Valley Co.*, 117 Idaho 351, 357, 787 P.2d 1159, 1165 (1990) (analyzing the federal and state guarantees concurrently); *Leliefeld v. Johnson*, 104 Idaho 357, 372-75, 659 P.2d 111, 126-29 (1983) (same); *Standlee v. State*, 96 Idaho 849, 853, 538 P.2d 778, 782 (1975) (same).

The Equal Protection Clause of the Fourteenth Amendment is designed to assure that those persons similarly situated with respect to governmental action are treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The same protection is afforded under the Idaho Constitution. *State v. Missamore*, 119 Idaho 27, 33, 803 P.2d 528, 534 (1990). Selective or discriminatory enforcement or application of a statute may amount to an equal protection violation under the United States or Idaho Constitution if the challenger shows a deliberate plan of discrimination based on some unjustifiable classification. *Anderson v. Spalding*, 137 Idaho 509, 514, 50 P.3d 1004, 1009 (2002); *Henson v. Dep't of Law Enforcement*, 107 Idaho 19, 23, 684 P.2d 996, 1000 (1984); *State v. Hayes*, 108 Idaho 556, 560, 700 P.2d 959, 963 (Ct. App. 1985). A "class of one" may state an equal protection claim if he or she was intentionally treated differently from others similarly situated and the difference in treatment fails to satisfy the requisite level of scrutiny. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam); *Anderson*, 137 Idaho at 514, 50 P.3d at 1009. Different levels of scrutiny apply to challenges under the Fourteenth Amendment's Equal Protection Clause. Strict scrutiny applies to fundamental rights and suspect classes, intermediate scrutiny[1] applies to classifications

---

[1]     Idaho utilizes means-focus scrutiny instead of intermediate scrutiny. Means-focus scrutiny, unlike the federal intermediate scrutiny, is employed "where the discriminatory character of a challenged statutory classification is apparent on its face and where there is also a

10

involving gender and illegitimacy, and rational basis scrutiny applies to all other challenges. *State v. Mowrey*, 134 Idaho 751, 754-55, 9 P.3d 1217, 1220-21 (2000). Under rational basis review, the challenging party has the burden to prove that the state's goal is not legitimate, the challenged law is not rationally related to the legitimate government purpose, and there is not any conceivable state of facts that will support it. *Id.* at 755, 9 P.3d at 1221.

Waidelich asserts that a second prisoner, also in the same therapeutic community program as Waidelich, produced a urine test low in creatinine. He asserts that a disciplinary offense report was lodged against the second prisoner for the same violation as Waidelich, yet the second prisoner was released on parole. Deputy Warden Cluney argues there is no equal protection violation because there is no liberty interest in parole. Alternatively, Deputy Warden Cluney argues Waidelich was not similarly situated as the other prisoner. Warden Wengler and Hearing Officer Armfield also argue Waidelich is not similarly situated. The respondents do not dispute that a second prisoner in the same therapeutic community was issued a disciplinary offense report with the same violation alleged as Waidelich, but distinguish that the Parole Commission was not notified of the disciplinary offense report. The respondents submit that the second prisoner was issued the disciplinary offense report less than twenty-four hours prior to his parole. Furthermore, as a matter of policy, the respondents submit that they hold hearings on the alleged violation within seven days of serving notice on the prisoner, with no less than twenty-four hours' notice. That is, the respondents assert the other prisoner was set for parole before the required hearing could, at its earliest, be held. Waidelich did not dispute these assertions below, nor does he dispute them on appeal. The district court granted summary judgment to the respondents because the court determined evidence supporting the equal protection claim was lacking.

Initially, we address Deputy Warden Cluney's assertion that no equal protection violation occurred because there is no liberty interest. While Deputy Warden Cluney's assertion is correct in that due process requires a liberty interest, equal protection does not. *State v. Reed*, 107 Idaho 162, 167-68, 686 P.2d 842, 847-48 (Ct. App. 1984) ("Equal protection focuses not upon the

patent indication of a lack of relationship between the classification and the declared purpose of the statute." *Coghlan v. Beta Theta Pi Fraternity*, 133 Idaho 388, 395, 987 P.2d 300, 307 (1999) (quoting *Jones v. State Bd. of Med.*, 97 Idaho 859, 871, 555 P.2d 399, 411 (1976)).

broad impact of a statute on life, liberty or property but upon any classification within the statute which allocates this impact differently among the categories of persons affected."); *People v. McKee*, 223 P.3d 566, 586 (Cal. 2010) ("[D]ue process affords individuals a baseline of substantive and procedural rights, whereas equal protection safeguards against the arbitrary denial of benefits to a certain defined class of individuals, even when the due process clause does not require that such benefits be offered.").

Waidelich argues that he was treated differently than another, similarly situated prisoner who was given a disciplinary offense report. In essence, Waidelich has raised a "class of one" argument. Waidelich has not alleged discrimination based on a suspect classification or age or gender; thus, rational basis review applies. *Mowrey*, 134 Idaho at 755, 9 P.3d at 1221. To lodge a successful challenge under the *Village of Willowbrook* standard, Waidelich must show that he was intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment. *Village of Willowbrook*, 528 U.S. at 564. *See also Viking Const., Inc. v. Hayden Lake Irrigation Dist.*, 149 Idaho 187, 198-199, 233 P.3d 118, 129-30 (2010), *abrogated on other grounds by Verska v. Saint Alphonsus Regional Medical Center*, 151 Idaho 889, 265 P.3d 502 (2011). We address the third prong, as it is dispositive of this issue. "'Equal protection' . . . emphasizes disparity in treatment by a State between classes of individuals whose situations are *arguably indistinguishable*." *Viking Const.*, 149 Idaho at 199, 233 P.3d at 130 (emphasis added) (quoting *Ross v. Moffitt*, 417 U.S. 600, 609 (1974)). In Waidelich's case, the uncontroverted facts concerning the second prisoner's situation distinguish the second prisoner's situation from Waidelich's situation. The second prisoner received a disciplinary offense report, but he was paroled before the Correctional Center could hold a disciplinary hearing. The lodging of a disciplinary offense report does not equal the finding of a violation. A hearing officer determined that Waidelich violated the rule; however, a hearing officer did not find the second prisoner violated the rule because the Correctional Center could not hold a hearing before the second prisoner was paroled. "Under the equal protection clause, we do not inquire whether persons are similarly situated for all purposes, but whether they are similarly situated for purposes of the law challenged." *People v. Hofsheier*, 129 P.3d 29, 36 (Cal. 2006) (internal quotation marks omitted). Hearing Officer Armfield states, "To my knowledge, ICC does not have the authority to hold an inmate from parole in order to conduct a DOR hearing." Waidelich

offers no legal challenge to this statement. Thus, Waidelich and the second prisoner were differently situated.

Waidelich further argues, in part, that the application of the disciplinary offense system results in an unfair situation: that is, the disciplinary offense system allowed for the release of one prisoner on parole while Waidelich was not. It is well established that an equal protection violation can be established "when a plaintiff shows by his or her well-pleaded facts that she was treated differently from 'others similarly situated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Clark v. Boscher*, 514 F.3d 107, 114 (1st Cir. 2008) (quoting *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 57 (1st Cir. 2006)). Here, there are no impermissible considerations asserted against the respondents. As a consequence, Waidelich has not prevailed on his equal protection claim. Waidelich failed to raise a genuine issue of material fact, and the respondents are entitled to judgment as a matter of law.

## D. Denial of Motion to Appoint Counsel

Finally, Waidelich argues the district court erred by denying Waidelich's request for appointment of counsel. Specifically, Waidelich argues the district court applied the incorrect legal standards. Below, Waidelich argued counsel should have been appointed because: (1) this was a matter of public interest; (2) the policy Waidelich challenged was unavailable to him; (3) there was no notice of the rule that Waidelich violated; and (4) the release of the second prisoner demonstrated an inequity.

In Idaho, there is no mandatory right to counsel associated with petitions for a writ of habeas corpus. *Quinlan*, 138 Idaho at 730, 69 P.3d at 150. Although Waidelich argues that the district court should have applied the factors for appointing counsel announced in *Swader v. State*, 143 Idaho 651, 653, 152 P.2d 12, 14 (2007), the factors in *Swader* apply to post-conviction relief, under the Uniform Post-Conviction Procedures Act, Idaho Code §§ 19-4901 to 19-4911. To the extent that cases previous to *Quinlan*, such as *Banks v. State*, 128 Idaho 886, 889, 920 P.2d 905, 908 (1996), indicated that a court had discretion to appoint counsel in a habeas corpus action pursuant to provisions of the Uniform Post-Conviction Procedures Act contained in Idaho Code § 19-4904, they are effectively overruled by *Quinlan*, which held that the Uniform Post-Conviction Procedures Act is not applicable. *Quinlan*, 138 Idaho at 730, 69 P.3d at 150 ("Habeas corpus is governed by its own statutory framework set forth in I.C. §§ 19-4201-4236,

13

in which there is no requirement for mandatory appointment of counsel in habeas proceedings."). There is some suggestion in *Wilbanks v. State*, 91 Idaho 608, 611, 428 P.2d 527, 530 (1967), and *Freeman v. State*, 87 Idaho 170, 180, 392 P.2d 542, 548 (1964), that in special circumstances the Due Process Clause could require appointment of counsel. *See also Knaubert v. Goldsmith*, 791 F.2d 722, 728 (9th Cir. 1986) (questioning whether denial of the federal habeas petitioner's motion for appointment of counsel amounted to a denial of due process). However, no such extraordinary circumstances are present here. The district court did not err in denying Waidelich's request for appointed counsel.

## IV.

## CONCLUSION

We need not address the issue of the constitutionality of Idaho Code §§ 19-4205 and 19-4209 because Waidelich did not raise this argument in his petition before the district court and, generally, we do not address issues on appeal that were not raised below. As to the alleged due process and equal protection violations, we are persuaded that there were no genuine issues of material fact, and we conclude the district court properly granted summary judgment. Waidelich was sufficiently notified that providing an adulterated urine sample would result in a violation of the prison rules, and therefore, there was no substantive due process violation. Waidelich has no liberty interest in a tentative parole date, and therefore, there was no procedural due process violation. Further, Waidelich's equal protection argument does not stand because Waidelich was not similarly situated and because Waidelich has not shown that any impermissible considerations were used in cancelling his tentative parole date. Lastly, the district court did not err by declining to appoint counsel for Waidelich because there is no statutory basis for the appointment of counsel in habeas proceedings and our review of the record does not indicate that a special circumstance exists that would necessitate the appointment of counsel under the Due Process Clause. Therefore, Waidelich is not entitled to habeas relief. Accordingly, we affirm the judgment of the district court denying Waidelich's petition for a writ of habeas corpus.

Judge GRATTON and Judge MELANSON **CONCUR.**

14